# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

Case Nos. 23-2(L) and 23-3

**UNITED STATES OF AMERICA**,
Appellee
v.
**CHADRICK EVAN FULKS AND
BRANDON BASHAM**
Appellants.

On Appeal from Order of United States District Court,
District of South Carolina (Hon. Joseph F. Anderson, Jr.)
entered (January 10, 2023), in Criminal Action
No. 4:02-992 and Civil Action Nos. 4:16-cr-2058
and 4:15-cv-2027

# INITIAL BRIEF FOR APPELLANTS

Peter Williams
Assistant Federal Defender
Federal Community Defender Office
for the Eastern District of
Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520

Leticia Marquez
Lindsey Layer
Assistant Federal Public Defenders
Federal Public Defender's Office
District of Arizona
407 W. Congress Street, Suite 501
Tucson, Arizona 85701
(520) 879-7622

*Counsel for Appellant, Chadrick Fulks*     *Counsel for Appellant, Brandon Basham*

Dated: July 21, 2023

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... ii

STATEMENT OF JURISDICTION............................................................1

STATEMENT OF ISSUES ..........................................................................1

STATEMENT OF THE CASE......................................................................2

STANDARD OF REVIEW ..........................................................................4

SUMMARY OF ARGUMENTS...................................................................4

ARGUMENT ...............................................................................................7

I.   Carjacking Resulting in Death Under 18 U.S.C. § 2119 Does Not Qualify
     as a Crime of Violence Under the Elements Clause of 18 U.S.C.
     § 924(c)(3)(A). .................................................................................7

     A. The district court erred in finding that *Evans* survives *Taylor*. ...................8

     B. Carjacking resulting in death is not a crime of violence under *Borden*. ....22

II.  Even Assuming Federal Carjacking Is a Crime of Violence, Appellants'
     § 924 Convictions Are Invalid Because Kidnapping Is Not a Crime of
     Violence.........................................................................................29

     A. Mr. Fulks's § 924 convictions were not expressly predicated on the
        carjacking offense. ..................................................................30

     B. Mr. Basham's § 924 convictions were not expressly predicated on the
        carjacking offense. ..................................................................35

III. Appellants Should Be Granted Relief from Their Death Sentences................36

CONCLUSION .......................................................................................45

# TABLE OF AUTHORITIES

**Federal Cases**

*Basham v. United States*, 109 F. Supp. 3d 753 (D.S.C. 2013) ..................................3

*Borden v. United States*, 141 S. Ct. 1817 (2021).............................................. passim

*Bourgeois v. Whitley*, 784 F.2d 718 (5th Cir. 1986)................................................38

*Descamps v. United States*, 570 U.S. 254 (2013) ........................................ 7, 12, 13

*Fulks v. United States*, 875 F. Supp. 2d 535 (D.S.C. 2010) ....................................3

*Garcia v. Gonzales*, 455 F.3d 465 (4th Cir. 2006) ................................................27

*Harbin v. Sessions*, 860 F.3d 58 (2d Cir. 2017)....................................................19

*Holloway v. United States*, 526 U.S. 1 (1999)................................... 23–24, 26–28

*James v. United States*, 476 F.2d 936 (8th Cir. 1973) ...........................................38

*Jerkins v. United States*, 530 F.2d 1203 (5th Cir. 1976) .......................................38

*Johnson v. Mississippi*, 486 U.S. 578 (1988)................................................. passim

*Johnson (Curtis) v. United States*, 559 U.S. 133 (2010) ..........................................8

*Johnson (Samuel) v. United States*, 576 U.S. 591 (2015)................................. 3, 40

*Jones v. United States*, 526 U.S. 227 (1999) ........................................................15

*Kubat v. Thieret*, 867 F.2d 351 (7th Cir. 1989) ....................................................39

*Mathis v. United States*, 579 U.S. 500 (2016) ................................................ passim

*Moncrieffe v. Holder*, 569 U.S. 184 (2013).................................................... 8, 11

*Strader v. Troy*, 571 F.2d 1263 (4th Cir. 1978)....................................................43

*Taylor v. United States*, 495 U.S. 575 (1990)........................................................8

*United States v. Allred*, 942 F.3d 641 (4th Cir. 2019) ...................................... 12, 13

*United States v. Basham*, 561 F.3d 302 (4th Cir. 2009) ...........................................3

*United States v. Basham*, 789 F.3d 358 (4th Cir. 2015) ...........................................3

*United States v. Cantu*, 964 F.3d 924 (10th Cir. 2020) ...........................................14

*United States v. Casteel*, 663 F.3d 1013 (8th Cir. 2011) ........................................16

*United States v. Chapman*, 666 F.3d 220 (4th Cir. 2012) ........................................30

*United States v. Crawley*, 2 F.4th 257 (4th Cir. 2021) ..................................... 31, 34

*United States v. Davis*, 139 S. Ct. 2319 (2019) ....................................................40

*United States v. Degeare*, 884 F.3d 1241 (10th Cir. 2018) ............................... 14, 18

*United States v. Evans*, 848 F.3d 242 (4th Cir. 2017) ..................................... passim

*United States v. Fulks*, 454 F.3d 410 (4th Cir. 2006) ..............................................3

*United States v. Fulks*, 683 F.3d 512 (4th Cir. 2012) ..............................................3

*United States v. Gutierrez*, 876 F.3d 1254 (9th Cir. 2017)......................................23

*United States v. Hillary*, 106 F.3d 1170 (4th Cir. 1997) ........................................39

*United States v. Mack*, 56 F.4th 303 (4th Cir. 2022)..............................................28

*United States v. McKibbon*, 878 F.3d 967 (10th Cir. 2017) ....................................18

*United States v. McNeal*, 818 F.3d 141 (4th Cir. 2016) .................................. passim

*United States v. Norman*, 935 F.3d 232 (4th Cir. 2019)..........................................17

*United States v. Ogun*, Nos. 16-7450, 20-6578, 2022 WL 843899
  (4th Cir. Mar. 22, 2022)..........................................................................................32

*United States v. Pinkney*, 551 F.2d 1241 (D.C. Cir. 1976)....................................38

*United States v. Pratt*, 351 F.3d 131 (4th Cir. 2003)...............................................16

*United States v. Royal*, 731 F.3d 333 (4th Cir. 2013).............................................13

*United States v. Runyon*, 994 F.3d 192 (4th Cir. 2021)...................................34, 36

*United States v. Small*, 944 F.3d 490 (4th Cir. 2019).............................................15

*United States v. Smith*, 115 F.3d 241 (4th Cir. 1997).............................................40

*United States v. Steward*, 793 F. App'x 188 (4th Cir. 2019)................................34

*United States v. Taylor*, 142 S. Ct. 2015 (2022)..........................................passim

*United States v. Taylor*, 979 F.3d 203 (4th Cir. 2020) ...........................................16

*United States v. Tucker*, 404 U.S. 443 (1972) .........................................................37

*United States v. Vann*, 660 F.3d 771 (4th Cir. 2011).............................................30

*United States v. Watkins*, 147 F.3d 1294 (11th Cir. 1998) ...................................39

*United States v. Wilson*, No. 16-4002, 2022 WL 1172165
  (4th Cir. Apr. 20, 2022)...........................................................................................34

*Vaughan v. United States*, No. CR 2:94-511-RMG, 2021 WL 4993537
  (D.S.C. Oct. 27, 2021)..............................................................................................26

*Zant v. Stephens*, 462 U.S. 862 (1983) ...................................................................36

## Federal Statutes

18 U.S.C. § 924.......................................................................................... passim
18 U.S.C. § 2119........................................................................................ passim
28 U.S.C. § 1291................................................................................................1
28 U.S.C. § 2244................................................................................................1
28 U.S.C. § 2253................................................................................................1
28 U.S.C. § 2255................................................................................... 1, 2, 3, 4

## Other Authorities

ALI, Model Penal Code § 222.1 (1980) .................................................................9

Eric Wm. Ruschky, Pattern Jury Instructions for Federal Criminal Cases, District
  of South Carolina (2020 Online Edition) ........................................................18

*United States v. Brown*, No. 4:05-cr-00770-TLW (D.S.C. May 17, 2006), Dkt. No.
  175 (Jury Instructions)..........................................................................................19

*United States v. Harris*, No. 4:16-CR-25(2), 2017 WL 10058075 (E.D. Tex. May
  24, 2017), Dkt. No. 185 (Jury Instructions) .......................................................19

*United States v. Jenkins*, 15-3693 (7th Cir. July 24, 2019), Dkt. No. 84
  (Government's Position Statement in Light of *United States v. Davis*) ..............40

*United States v. Ware*, No. 2:09-CR-113-WKW, 2009 WL 6446092 (M.D. Ala. Oct. 1, 2009), Dkt. No. 36 (Jury Instructions)......................................................20

## STATEMENT OF JURISDICTION

This appeal is from the denial of Mr. Fulks's and Mr. Basham's successive motions to vacate their sentences pursuant to 28 U.S.C. § 2255. The district court had jurisdiction to entertain the motions pursuant to 28 U.S.C. §§ 2244(b) and 2255(h) and this Court's Orders dated June 17, 2016. In a consolidated order issued on January 10, 2023, the district court denied Mr. Fulks and Mr. Basham relief but granted a certificate of appealability on the three issues identified below. JA0622; JA0659.

Mr. Fulks and Mr. Basham timely filed notices of appeal on March 7, 2023. JA0661; JA0663. This Court consolidated the appeals on March 10, 2023. ECF No. 8.

This Court has jurisdiction under 28 U.S.C. §§ 1291 and 2253.

## STATEMENT OF ISSUES

The district court certified the following three issues for appeal:

(1) Whether federal carjacking under 18 U.S.C. § 2119(2) is a predicate crime of violence as defined by 18 U.S.C. § 924(c)(3)(A);

(2) assuming it is, whether Appellants' convictions under 18 U.S.C. § 924(c) and (o) were necessarily based on federal carjacking; and

(3) assuming federal carjacking is not a predicate crime of violence or that it

did not necessarily serve as a predicate to Appellants' § 924 convictions,[1] whether the proper remedy is to vacate Appellants' sentences on these counts alone or vacate the sentences as to all counts of conviction, including their death penalties, and award them new penalty phase trials.

## STATEMENT OF THE CASE

### *Trial, Direct Appeal, and Initial § 2255 Proceedings*

Mr. Fulks and Mr. Basham were indicted in the District Court of South Carolina in 2002. In 2003, the grand jury returned a superseding indictment charging both defendants with, inter alia, federal carjacking under § 2119(2), kidnapping under 18 U.S.C. § 1201(a), possessing or using a firearm during or in relation to a crime of violence under § 924(c), and conspiracy to carry or use a firearm during or in relation to a crime of violence under § 924(o). JA0148–0163. The Government subsequently filed a notice of intent to seek the death penalty on the kidnapping and carjacking charges.

Mr. Fulks pled guilty to the capital charges and the § 924 offenses in 2004. A contested sentencing hearing took place before a jury, which returned a sentence of death. This Court affirmed Mr. Fulks's sentence on direct appeal. *United States v.*

---

[1] Appellants adopt the convention employed in the lower court's opinion and refer to the § 924(c) and § 924(o) convictions collectively as the "§ 924 convictions." *See* JA0595 n.7; JA0632 n.7 (explaining that "the same legal analysis applies equally to each § 924(c) and § 924(o) conviction").

*Fulks*, 454 F.3d 410 (4th Cir. 2006), *cert. denied*, 551 U.S. 1147 (2006). Mr. Fulks filed a motion to vacate the convictions and sentence and for a new trial pursuant to 28 U.S.C. § 2255, which was denied. *Fulks v. United States*, 875 F. Supp. 2d 535 (D.S.C. 2010). This Court affirmed on appeal. *United States v. Fulks*, 683 F.3d 512 (4th Cir. 2012), *cert. denied*, 571 U.S. 941 (2013).

In 2004, Mr. Basham was convicted of eight counts, including carjacking resulting in death and kidnapping resulting in death and the § 924 charges. A jury sentenced Mr. Basham to death on the capital charges. This Court affirmed Mr. Basham's convictions and sentence on direct appeal. *United States v. Basham*, 561 F.3d 302 (4th Cir. 2009), *cert. denied*, 560 U.S. 938 (2009). Mr. Basham filed a motion to vacate the convictions and sentence and for a new trial pursuant to 28 U.S.C. § 2255, which was denied. *Basham v. United States*, 109 F. Supp. 3d 753 (D.S.C. 2013). This Court affirmed on appeal. *United States v. Basham*, 789 F.3d 358 (4th Cir. 2015), *cert. denied*, 577 U.S. 1230 (2016).

### Successive § 2255 Proceedings

In 2016, this Court authorized both Mr. Fulks and Mr. Basham to file a successive motion for relief under 28 U.S.C. § 2255(h) to challenge their § 924 convictions, and the resulting death sentences, pursuant to the Supreme Court's decision in *Johnson (Samuel) v. United States*, 576 U.S. 591 (2015). Appellants argued that the convictions were no longer supported by valid predicate crimes of

violence because the § 924(c)(3)(B) residual clause had been declared unconstitutional in *Johnson (Samuel)* and neither potential predicate offense— kidnapping resulting in death and carjacking resulting in death—requires a sufficient use of intentional, violent physical force to satisfy the § 924(c)(3)(A) elements clause[2] or otherwise qualifies as a crime of violence.

Appellants' successive § 2255 motions were docketed in the District of South Carolina, which subsequently stayed the proceedings pending the outcome of several cases litigated before the Supreme Court and this Court, including *Borden v. United States*, 141 S. Ct. 1817 (2021). Following the relevant decisions from the Supreme Court and this Court, and further briefing on those decisions and the recent decision of the Supreme Court in *United States v. Taylor*, 142 S. Ct. 2015 (2022), the district court denied relief but granted a certificate of appealability. This appeal follows.

## STANDARD OF REVIEW

This Court reviews de novo the district court's legal conclusions. *United States v. Tucker*, 603 F.3d 260, 262 (4th Cir. 2010).

## SUMMARY OF ARGUMENTS

Appellants challenge the validity of their convictions under 18 U.S.C. § 924(c) and 924(o) on the grounds that the predicate offenses upon which the

---

[2] Section 924(c)(3)(A) is referred to alternatively as the "elements clause" and the "force clause." Appellants employ the former term.

convictions rely—kidnapping resulting in death (18 U.S.C. § 3571) and carjacking resulting in death (18 U.S.C. § 2119)—fail to satisfy the definition of a crime of violence in 18 U.S.C. § 924(c)(3). Because the Government presumes without conceding that kidnapping resulting in death necessarily qualifies as a crime of violence, the key remaining issue is whether carjacking resulting in death is necessarily a crime of violence under § 924(c)(3)(A)'s elements clause. Although this Court previously answered this question in the affirmative, *see United States v. Evans*, 848 F.3d 242 (4th Cir. 2017), that holding has since been abrogated by the Supreme Court's decisions in *Taylor* and *Borden*.

In *Taylor*, 142 S. Ct. at 2019, the Court held that Hobbs Act robbery, which "makes it a federal crime to commit, attempt to commit, or conspire to commit a robbery with an interstate component," does not categorically satisfy the elements clause because attempted robbery does not necessarily require the use of violent physical force. Because federal carjacking likewise may be committed by the attempted taking of the car, the holding in *Taylor* applies with equal force to Mr. Fulks's carjacking conviction.

In *Borden*, 141 S. Ct. at 1825, the Supreme Court held that a mens rea of recklessness is insufficient to satisfy the elements clause of § 924(c)(3)(A). Rather, to come within the elements clause, the use or threat of physical force must be simultaneously accompanied by an intent to apply that force or threatened force

against another. *Id.* Federal carjacking cannot satisfy this test because it requires only *conditional* intent to cause death or injury *should it be necessary* to take possession of the car.

Notwithstanding *Taylor* and *Borden*, the district court below erroneously determined that *Evans* remains valid and controls in this case. Specifically, the court found *Taylor* had no impact on *Evans* by inappropriately reading § 2119 as divisible between "completed" carjacking and "attempted" carjacking. JA0606–0608; JA0643–0645. The lower court also failed to address Appellants' argument that the holding in *Evans* was premised on a crime-of-violence analysis that was expressly rejected in *Taylor*. JA0607 n.9; JA0644 n.9. The district court found *Borden* to be irrelevant by relying on caselaw interpreting statutes that do not involve the "conditional" intent element applied to federal carjacking, and thus, do not explain how the mens rea needed for conditional intent survives *Borden*. JA0610–0611; JA0647–0648.

The district court also erred in rejecting Appellants' argument that, even assuming carjacking is a crime of violence, their § 924 convictions remain invalid because the convictions were predicated on kidnapping, not carjacking. In particular, the court incorrectly determined that, because carjacking *could have* served as the predicate offense, and because federal carjacking qualifies as a crime of violence, the § 924 convictions stand. In fact, regardless of whether this Court affirms the

finding below that federal carjacking satisfies the elements clause, the § 924 convictions should be invalidated because none was *expressly predicated* on carjacking.

In short, whether based on a holding that federal carjacking fails to qualify as a crime of violence under the § 924 elements clause or on a determination that Appellants' § 924 convictions were predicated on kidnapping, the convictions are invalid. As a result, Appellants' death sentences should be vacated consistent with Supreme Court jurisprudence mandating resentencing when there is even a possibility that an invalid conviction influenced the penalty phase decision of any juror in a capital case. The district court's refusal to recognize that such relief would be warranted if the contested convictions are invalid contravenes this jurisprudence and should be reversed by this Court.

## ARGUMENT

I.     **Carjacking Resulting in Death Under 18 U.S.C. § 2119 Does Not Qualify as a Crime of Violence Under the Elements Clause of 18 U.S.C. § 924(c)(3)(A).**

To determine whether a predicate offense qualifies as a crime of violence under § 924, reviewing courts must use the categorical approach, which requires that courts "'look only to the statutory definitions'—i.e., the elements—of a defendant's [offense] and *not* 'to the particular facts underlying [the offense].'" *Descamps v. United States*, 570 U.S. 254, 261 (2013) (quoting *Taylor v. United States*, 495 U.S.

7

575, 600 (1990)) (emphasis in original). Courts must also presume that the predicate offense "rested upon [nothing] more than the least of th[e] acts criminalized" by the statute or elements in question. *Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013) (quoting *Johnson (Curtis) v. United States*, 559 U.S. 133, 137 (2010)). "The only relevant question is whether the federal felony at issue always requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force." *Taylor*, 142 S. Ct. at 2020.

Federal carjacking under § 2119 is not a crime of violence under § 924(c)(3)(A) because it does not categorically require the use of intentional, violent physical force. Although this Court held otherwise in *Evans*, 848 F.3d 242, that ruling has since been abrogated by the Supreme Court's decisions in *Taylor* and *Borden*. The district court opinion is not sustainable and should be reversed by this Court.

**A.    The district court erred in finding that *Evans* survives *Taylor*.**

**1.    *Taylor* abrogated this Court's holding in *Evans*.**

In *Taylor*, 142 S. Ct. at 2022–21, the Supreme Court considered whether the Hobbs Act, which criminalizes interference with interstate commerce by, inter alia, robbery or attempted robbery, is a violent felony as defined by § 924(c)(3)(A). Applying the categorical approach, the Court determined that it was possible to imagine cases "appropriately reached by a charge of attempted robbery, where the

actor does not actually harm anyone or even threaten harm." *Id.* at 2020 (quoting ALI, Model Penal Code § 222.1, p. 114 (1980)). Accordingly, "no element" of Hobbs Act robbery necessarily requires proof that the defendant used violent physical force, and the offense cannot satisfy the elements clause of § 924. *Id.* at 2021.

In reaching this conclusion, the Court rejected the Government's argument that an offense should be deemed a crime of violence unless the defendant is able to demonstrate a "realistic probability" that an individual would be prosecuted based on conduct that did not require the use, attempted use, or threatened use of force. *Id.* at 2024–25. The Court explained:

> [T]he government faults Mr. Taylor for failing to identify a single case in which it has prosecuted someone for attempted Hobbs Act robbery without proving a communicated threat. But what does that prove? . . . Put aside the oddity of placing a burden on the defendant to present empirical evidence about the government's own prosecutorial habits. Put aside, too, the practical challenges such a burden would present in a world where most cases end in plea agreements, and not all of those cases make their way into easily accessible commercial databases. An even more fundamental and by now familiar problem lurks here. To determine whether a federal felony qualifies as a crime of violence, § 924(c)(3)(A) doesn't ask whether the crime is sometimes or even usually associated with communicated threats of force (or, for that matter, with the actual or attempted use of force). It asks whether the government must prove, as an *element* of its case, the use, attempted use, or threatened use of force.

*Id.* at 2024 (emphasis in original).

The Court went on to stress that, in drafting § 924(c)(3)(A)'s elements clause,

9

Congress "did not mandate an empirical inquiry into how crimes are usually committed, let alone impose a burden on the defendant to present proof about the government's own prosecutorial habits." *Id.* at 2025. Instead, "Congress tasked the courts with a much more straightforward job: Look at the elements of the underlying crime and ask whether they require the government to prove the use, attempted use, or threatened use of force." *Id*.

Here, the "straightforward job" with which this Court is tasked—namely, looking at the elements of the federal carjacking statute and asking whether they can be satisfied without violent physical force—yields the same result as was reached in *Taylor* because, like Hobbs Act robbery, federal carjacking can be accomplished by a mere attempt to commit the crime. *See* § 2119 ("Whoever . . . takes a motor vehicle . . . by force and violence or by intimidation, or attempts to do so. . . .). As a result, this Court's holding in *Evans* that federal carjacking qualifies as a predicate crime of violence under § 924(c)(3)(A) is no longer valid.

Significantly, the issue whether attempt to take a vehicle under § 2119 constitutes a crime of violence was not raised in *Evans*. Rather, the only issue in *Evans* was whether the offense qualifies as a crime of violence given that it may be committed, inter alia, "by intimidation." *Evans*, 848 F.3d at 246. Relying on its decision in *United States v. McNeal*, 818 F.3d 141 (4th Cir. 2016), which analyzed the crime-of-violence status of the federal bank robbery statute, this Court

10

determined that "intimidation" as used in the federal carjacking statute requires the threatened use of physical force and therefore satisfies the § 924 elements clause. *Evans*, 848 F.3d at 247; *see also id.* at 246 ("Our analysis whether the federal crime of carjacking is a crime of violence for purposes of Section 924(c) is governed directly by our recent decision in *McNeal*, 818 F.3d 141."). But, because the categorical approach requires courts to presume that the predicate offense "rested upon [nothing] more than the least of th[e] acts criminalized" by the statute in question, *Moncrieffe*, 569 U.S. at 190–91, and because the federal carjacking statute criminalizes attempt, the holding in *Evans* can no longer stand in light of *Taylor*, regardless of whether intimidation involves the requisite use of force.

Additionally, *Taylor* abrogated *Evans* by declaring that a court's § 924(c) crime-of-violence analysis cannot turn on "whether the crime is sometimes or even usually associated" with the requisite level of force, 142 S. Ct. at 2024, because *Evans* was "governed directly" by *McNeal*, and *McNeal* was based on precisely that type of analysis. Specifically, the defendants in *McNeal* had argued that bank robbery by "intimidation" did not categorically require physical force given that a "person can commit bank robbery by means . . . such as 'by threatening to poison or expose the teller to a hazardous gas.'" *McNeal*, 818 F.3d at 156. But this Court found there was no reason to "dwell on whether to define 'intimidation' . . . in terms of a threatened use of force" because "it will be the rare bank robber who commits that

offense with poison." *Id.*; *see also id.* (noting defendant's failure to "identif[y] a single bank robbery prosecution where the victim feared bodily harm from something other than violent physical force"). This Court "therefore" determined that "intimidation entails a threat to use violent physical force" and federal bank robbery satisfies the § 924 elements clause. *Id.* Again, that holding directly dictated the holding in *Evans* that federal carjacking satisfies the § 924 elements clause. Hence, *McNeal*'s application of an invalid crime-of-violence analysis requires not only that the holding in *McNeal* be revisited in the wake of *Taylor*, but also that the holding in *Evans* be revisited.

> 2.    **The district court erred in finding that *Evans* survives *Taylor*.**

The district court below found *Taylor* inapplicable to Appellants' cases by employing the "modified" categorical approach to its crime-of-violence analysis of carjacking. *See* JA0606–0608; JA0643–0645. The modified approach, which is permissible *only* where the statute under review is divisible, *Descamps*, 570 U.S. at 257–58, allows a court to "consult a limited set of record documents (such as the indictment, jury instructions, or plea agreement)" to determine "what crime, with what elements, a defendant was convicted of" and assess whether *that* crime satisfies the elements clause, *United States v. Allred*, 942 F.3d 641, 648 (4th Cir. 2019) (quoting *Mathis v. United States*, 579 U.S. 500, 505 (2016)). Here, the district court read 18 U.S.C. § 2119 as divisible between "completed" carjacking and "attempted"

carjacking and, after finding that Mr. Fulks and Mr. Basham were convicted of the former, ruled that the non-existent separate crime of "completed" carjacking qualifies as a crime of violence. JA0606–0608; JA0643–0645. Having reached this conclusion, the court found it unnecessary to consider the impact on *Evans* of *Taylor*'s ban against requiring empirical proof that an offense may be committed without violence. *See* JA0607 n.9; JA0644 n.9. The district court erred on both counts.

### a.   The federal carjacking statute is not divisible between completed and attempted carjacking.

The first problem with the lower court's ruling is that use of the modified categorical approach is confined to divisible statutes, and the court erred in finding the federal carjacking statute divisible. As the Supreme Court explained in *Decamps*, a statute is divisible only when it has alternative *elements* rather than alternative *means*. 570 U.S. at 278. Elements as used in this context are statutory phrases that a jury must find "unanimously and beyond a reasonable doubt" to convict the defendant. *Id.*; *see also Mathis*, 579 U.S. at 504 (same). By contrast, "means" are statutory phrases that a jury need not unanimously find. *Mathis*, 579 U.S. at 517–18. Thus, when a statute has disjunctive statutory phrases, they are alternative "means" if "it is enough that each juror agree only that one of the two occurred, without settling on which." *United States v. Royal*, 731 F.3d 333, 341 (4th Cir. 2013); *see also Allred*, 942 F.3d at 648 (statute divisible if it "includes multiple alternative

elements that create different versions of the crime" (internal quotations and citations omitted)).

It is the Government's burden to prove with "certainty" that a statute is divisible under these terms. *Mathis*, 579 U.S. at 519. If the law does not "speak plainly" as to whether an offense is divisible, the requisite certainty is absent. *Id.* (citation and internal quotation marks omitted). And, "[i]f [the court] cannot ultimately say with certainty that the statute is divisible" the statute is not divisible and the court cannot apply the modified categorical approach. *United States v. Cantu*, 964 F.3d 924, 929 (10th Cir. 2020) (citation omitted); *see also United States v. Degeare*, 884 F.3d 1241, 1248 (10th Cir. 2018) ("[U]nless we are certain that a statute's alternatives are elements rather than means, the statute isn't divisible and we must eschew the modified categorical approach."). The decision below failed to acknowledge the Government's heavy burden regarding divisibility, which cannot be met in this case.

Section 2119 defines carjacking as follows:

Whoever, with the intent to cause death or serious bodily harm[,] takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall—

(1)    be fined under this title or imprisoned not more than 15 years, or both,

(2)    if serious bodily injury . . . results, be fined under this title or imprisoned not more than 25 years, or both and

(3)    if death results, be fined under this title or imprisoned for a number of years up to life, or both, or sentenced to death.

As explained above, the district court read the statute as split between an offense of "completed" carjacking, with "force and violence or intimidation" as means of committing that offense, and a separate offense of "attempted" carjacking. JA0606–0607; JA0643–0644. Yet this reading is not consistent with the statutory language. The statute itself says nothing about an offense of "completed" carjacking. Rather, the operative language reads: "by force and violence or by intimidation, or attempts to do so." The statute therefore describes three alternative ways of committing a single offense: (1) by force and violence, (2) by intimidation, and (3) attempt. Many courts, including this Court, have consistently treated "by force and violence" and "by intimidation" as two means of committing the offense. *See, e.g.*, *United States v. Small*, 944 F.3d 490, 498 (4th Cir. 2019) (elements include "by force and violence or by intimidation") (citation omitted). Because the first two items in the list are simply means of committing the offense, the logical conclusion is that the third item in the list is also a means rather than an element of a separate offense.

That the statute is indivisible is further supported by other caselaw from the Supreme Court and this Court. For instance, in *Jones v. United States*, 526 U.S. 227 (1999), the Supreme Court considered whether the jury had to agree on the level-of-injury components to the carjacking statute or whether § 2119(1)-(3) described

15

sentencing enhancements that need not be ruled on by the jury. Although the *Jones* Court held that the numbered sections constituted three separate elements describing the level of harm that resulted and divided the carjacking statute into three separate offenses based on that level of harm, *Jones* did not hold or imply that § 2119 should be subdivided in any other way. *Id.* at 252–53. In a similar vein, this Court has previously identified "four elements" in the federal bank robbery statute, the first *single element* of which is: "(1) the defendant *took, or attempted to take*, money belonging to, or in the custody, care, or possession of, a bank, credit union, or saving and loan association." *McNeal*, 818 F.3d at 152 (emphasis added); *see also United States v. Casteel*, 663 F.3d 1013, 1019 (8th Cir. 2011) ("To obtain a conviction for carjacking [under 18 U.S.C. § 2119], the government must prove three basic elements: (1) the defendant *took or attempted to take* a motor vehicle . . . by force and violence or by intimidation; (2) the defendant acted with the intent to cause death or serious bodily harm; and (3) the motor vehicle [traveled interstate]." (emphasis added)).

By contrast, the cases relied on below fail to support the district court's conclusion that the statute is divisible. *See, e.g.*, JA0607–0608; JA0644–0645 (citing *United States v. Pratt*, 351 F.3d 131, 135 (4th Cir. 2003); *Mathis*, 932 F.3d at 265 n.23; *United States v. Taylor*, 979 F.3d 203, 208 (4th Cir. 2020); and *Taylor*, 142 S. Ct. at 2020)). *Pratt* and each of the *Taylor* cases are silent as to the issue of

16

divisibility, and *Mathis* merely observes in a footnote that the Hobbs Act is divisible between *robbery* and *extortion*, which clearly have alternative elements. *Mathis*, 932 F.3d at 265 n.23; *see also* 18 U.S.C. § 1951(b)(1)-(2) (robbery requires a taking from another "against his will," whereas extortion is a taking "with his consent"). Nothing in *Mathis* supports a similar conclusion as to "completed" and "attempted" Hobbs Act robbery. At most, the *Mathis* court assumed without deciding that the Hobbs Act was also divisible between the completed offense and the attempted offense. But even if such an assumption were made, it does not compel the same outcome here. *See, e.g.*, *United States v. Norman*, 935 F.3d 232, 241 (4th Cir. 2019) (explaining "courts often decide particular legal issues while assuming without deciding the validity of antecedent propositions, and such assumptions are not binding in future cases that directly raise the questions" because those issues were "not raised, not argued, and hence not analyzed" (citations omitted)). Moreover, the possible assumption made in *Mathis*, even if combined with the other cases cited by the court below, hardly establishes with "certainty" that § 2119 is divisible between completed and attempted carjacking.

The district court also ignored multiple factors weighing in favor of a finding that the statute is *not* divisible between completed and attempted carjacking. For instance, the court ignored that the carjacking statute bundles the alternative terms of taking "by force and violence or by intimidation" and attempting to do so within

a single sentence, which has been recognized as a good indication the statute is indivisible. *See, e.g.*, *United States v. McKibbon*, 878 F.3d 967, 975 (10th Cir. 2017). Additionally, the court ignored that the statute assigns the same penalty for the different ways of committing a crime, another factor favoring a finding of indivisibility. *See, e.g.*, *Degeare*, 884 F.3d at 1253 (citing *Mathis*, 579 U.S. at 518).

Lastly, the court failed to adequately account for the fact that the Pattern Jury Instructions for the District of South Carolina neither separate an attempt from the actual taking, nor require the jury to agree on whether the defendant took or attempted to take the motor vehicle. *See* Eric Wm. Ruschky, Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina, at 384–85 (2020 Online Edition)[3] ("For you to find the defendant guilty, the government must prove each of the following beyond a reasonable doubt: First, that the defendant *took, or attempted to take*, a motor vehicle. . . ." (emphasis added)). Rather, the court apparently adopted the Government's argument that prosecutors *typically* charge completed and attempted carjacking as separate offenses and found it persuasive that the Government claimed to be unaware of any case in which the Pattern Jury Instructions relied upon by Appellants had been used. JA0603–0605; JA0640–0642.

The Government's position suffers from several flaws. It ignores that

---

[3] Available at http://www.scd.uscourts.gov/pji/PatternJuryInstructions.pdf (last accessed June 5, 2023).

prosecutors commonly narrow a charging document to one statutory alternative for reasons that have no bearing on the distinct legal question of divisibility under the categorical approach, such as concerns relating to fair notice or double jeopardy. *See, e.g.*, *Harbin v. Sessions*, 860 F.3d 58, 66 (2d Cir. 2017) ("The values of fair notice and avoidance of double jeopardy often demand that the government specify accusations in ways unrelated to a crime's elements."). Furthermore, as the *Taylor* Court recognized, it is impractical to burden the defendant with "present[ing] empirical evidence about the government's own prosecutorial habits," particularly "in a world where most cases end in plea agreements, and not all of those cases make their way into easily accessible commercial databases." 142 S. Ct. at 2024.

Moreover, even setting aside the irrelevance of empirical evidence in this context and notwithstanding the practical challenges, Appellants have located several cases—including in the district of conviction—in which the jury was instructed that force or violence, intimidation, and attempt are three *means* of committing a taking under the federal carjacking statute. *See, e.g.*, *United States v. Brown*, No. 4:05-cr-00770-TLW (D.S.C. May 17, 2006), Dkt. No. 175 at 19 ("The taking was *done or attempted* by force and violence or by intimidation. . . .") (emphasis added); *United States v. Harris*, No. 4:16-CR-25(2), 2017 WL 10058075 (E.D. Tex. May 24, 2017), Dkt. No. 185 at 17 ("[T]he defendant intentionally *took or attempted to take* from a person a motor vehicle described in the First Superseding

Indictment. . . .") (emphasis added); *United States v. Ware*, No. 2:09-CR-113-WKW, 2009 WL 6446092 (M.D. Ala. Oct. 1, 2009), Dkt. No. 36 at 14 ("[T]he defendant *took or attempted to take* a motor vehicle from the person or presence of another. . . .") (emphasis added). At a minimum, these examples provide further evidence of the Government's inability to establish with "certainty" that the carjacking statute is divisible in the manner found by the court below. *Mathis*, 579 U.S. at 519. This Court must therefore assume that the statute is indivisible and that, after *Taylor*, federal carjacking cannot be considered a crime of violence under the § 924 elements clause.

> **b.    Federal carjacking is not a "crime of violence" because intimidation does not categorically involve violent physical force, and this Court's holding otherwise rested on a crime-of-violence analysis that was invalidated by *Taylor*.**

Even assuming arguendo that § 2119 is divisible between the alternative crimes of completed federal carjacking and attempted federal carjacking, Appellants' § 924 convictions are still void because intimidation does not categorically satisfy the elements clause. Although this Court held otherwise in *Evans*, that decision has been abrogated not only by the holding in *Taylor*, but also by *Taylor*'s command that § 924(c)(3)(A)'s elements clause does not allow for "an empirical inquiry into how crimes are usually committed, let alone impose a burden on the defendant to present proof about the government's own prosecutorial habits."

20

142 S. Ct. at 2025; *see also supra* § I.A.1.

The court below failed to address this argument. Instead, it determined that, because § 2119 is divisible, *Taylor* is "no longer applicable" and therefore the court did not need "address Petitioners' additional argument that *Taylor* also abrogates *Evans* given that *Taylor* rejected the requirement imposed in a number of cases that a defendant has to provide an empirical example of someone being prosecuted for conduct under the predicate statute that would not constitute a crime of violence." JA0607 n.9; JA0644 n.9. But *Taylor*'s rejection of any empirical-evidence requirement was in no way limited to the facts of that case, or to defendants convicted under § 924 based on a "completed" predicate offense, as opposed to an "attempted" predicate offense. Rather, *Taylor*'s refusal to adopt the Government's "realistic probability" test applies to *any* crime-of-violence analysis under § 924(c)(3)(A). *See, e.g.*, *Taylor*, 142 S. Ct. at 2024 ("To determine whether a federal felony qualifies as a crime of violence, § 924(c)(3)(A) doesn't ask whether the crime is sometimes or even usually associated with communicated threats of force (or, for that matter, with the actual or attempted use of force). It asks whether the government must prove, as an *element* of its case, the use, attempted use, or threatened use of force." (emphasis in original)).

Accordingly, *Taylor* invalidated this Court's decision in *McNeal* because, as explained above, the Court in *McNeal* did not limit itself to the "straightforward job"

with which Congress had tasked it in § 924(c)(3)(A), namely, "look[ing] at the elements of the underlying crime and ask[ing] whether they require the government to prove the use, attempted use, or threatened use of force." *Taylor*, 142 S. Ct. at 2025. Rather, *McNeal* determined that "intimidation" as used in the federal bank robbery statute satisfies the elements clause based on the defendant's failure to "identif[y] a single bank robbery prosecution where the victim feared bodily harm from something other than violent physical force" and the conclusory assertion that only "the rare bank robber" would commit the offense without at least threatening the use of violent physical force. *See McNeal*, 818 F.3d at 156; *see also supra* § I.A.1. Moreover, this Court's similar holding in *Evans*—that "intimidation," as used in the federal carjacking statute, satisfies the § 924 elements clause—was "governed directly" by *McNeal*, *see Evans*, 848 F.3d at 247. Thus, *Evans* itself also rested on an invalid crime-of-violence analysis.

Therefore, even if this Court affirms the lower court's finding on divisibility, it should nevertheless revisit *Evans* and hold that, because carjacking does not categorically require the use of violent physical force, even the separate offense of "completed" carjacking fails to qualify as a crime of violence under § 924(c).

## B. Carjacking resulting in death is not a crime of violence under *Borden*.

In addition to being invalidated by *Taylor*, *Evans* cannot survive the holding in *Borden* that the elements clause in the Armed Career Criminal Act ("ACCA"),

which is almost identical to § 924(c)(3)(A), requires the purposeful or knowing use of violent force. Recklessness will not suffice. 141 S. Ct. at 1821. Carjacking—even "completed," as opposed to "attempted," carjacking—is not a crime of violence under *Borden* because it does not necessarily require the knowing or purposeful use, threatened use, or attempted use of force, and the lower court's finding otherwise is not persuasive.

> **1. Carjacking does not categorically require the knowing or purposeful use of violent physical force.**

As discussed above, federal carjacking may be completed, inter alia, "by intimidation." § 2119. To establish intimidation, the Government need only prove the defendant took a motor vehicle "through conduct that would put an ordinary, reasonable person in fear of bodily harm." *United States v. Gutierrez*, 876 F.3d 1254, 1257 (9th Cir. 2017). The jury instructions in Mr. Basham's case illustrate this point:

> The phrase "intimidating manner" means that the defendant did or said something that would make an ordinary, reasonable person fear bodily harm. *Your focus should be on the defendant's behavior.* The Government does not have to prove that the defendant's behavior caused or could have caused great terror or panic. But it must show that an ordinary person would have feared bodily harm because of the defendant's behavior. The Government also does not have to prove that the defendant made explicit threats of bodily harm. *If you find that the defendant confronted the victim in such a way that it would reasonably create a fear of bodily harm, that is sufficient.*

JA0478–0479 (emphasis added).

Also relevant here is the Supreme Court's holding in *Holloway v. United*

*States*, 526 U.S. 1, 7–9 (1999), which established that the mens rea element of the federal carjacking statute—i.e., an "intent to cause death or serious bodily harm"— requires only *conditional* intent to cause death or injury *should it be necessary* to take possession of the car. Thus, not only does the perpetrator not need to convey any intent to harm to the victim, but any privately held intent to do so can be "subject to a condition which the [offender] hopes will not occur." *Id.* at 13 (Scalia, J., dissenting).

Together, these aspects of the carjacking statute mean that the offense may be committed by a carjacker who recklessly instills fear in his victim and obtains possession of the car, even though the carjacker never possesses a present intent to inflict harm, let alone violent physical harm. But the four-justice plurality opinion in *Borden* made clear that the ACCA elements clause (and, accordingly, the § 924(c) elements clause) "demands that the perpetrator *direct his action at, or target*, another individual." 141 S. Ct. at 1825 (emphasis added). Likewise, Justice Thomas, who provided the fifth vote in favor of the holding, found that the "use of physical force" had a "well-understood meaning applying only to intentional acts designed to cause harm." *Id.* at 1835 (Thomas, J., concurring). Both the plurality and Justice Thomas make clear that conduct that has caused force to be applied to another does not satisfy the elements clause unless the defendant "consciously deployed" or "trained" that force on the other person *knowing or intending* that he would be impacted. *Id.* at

1827. Stated otherwise, to come within the elements clause, the use or threat of physical force must be *simultaneously accompanied by* an intent to apply that force or threatened force against another. Critically, that requires "a deliberate choice of wreaking harm on another," not a "mere indifference to risk" or an understanding that an action carries a "potential" use of force. *Id.* at 1827, 1830.

Federal carjacking cannot satisfy the elements clause under *Borden*. Consider the following example. A carjacker wearing a face covering to conceal his identity approaches a driver about to enter her car. The carjacker says in a pleasant voice to the driver: "I will not hurt you, but please give me your keys." Given the context, an ordinary person could reasonably infer a threat of physical force, satisfying the intimidation element of the carjacking statute. There is no threatened use of force (just the opposite), but the intimidation element is satisfied because a reasonable person might nonetheless feel threatened. Moreover, the carjacker privately possesses the requisite conditional intent to harm if necessary, but he never conveys that intent to the victim. Indeed, it could be that the carjacker very much hopes *not* to harm the victim but would do so as a last resort. In that example, the elements of the carjacking statute are satisfied, based only on the carjacker's reckless indifference to the risk that his actions would cause the victim to fear bodily harm. Absent a knowing and purposeful mens rea, the offense does not satisfy the elements clause after *Borden*, and carjacking is not a "crime of violence" under

25

§ 924(c)(3)(A).

> **2.    The lower court erred in holding that *Evans* survives *Borden*.**

The district court rejected Appellants' arguments under *Borden* because: (1) this Court "unequivocally determined carjacking to be a crime of violence in *Evans* well after *Holloway* was decided;" and (2) the decision in *Borden* "does nothing to change this conclusion." JA0610; JA0647. Neither of these determinations withstands scrutiny.

First, the *Evans* court made no determination as to whether carjacking accomplished by "force and violence" excluded force that was recklessly employed by a defendant who did not have the present intent to use force. *See* 848 F.3d at 247–48. Similarly, when *Evans* held that intimidation in the context of a carjacking included a threat of force, it did not address the level of intent needed under this definition. *Id.* at 247. Because *Borden* requires the carjacking statute to exclude everything but a purposeful or knowing threat of violent force before carjacking can serve as a crime of violence, the *Evans* court's ruling on intimidation is no longer valid and must be revisited.

Second, the district court failed to support its conclusion that *Borden* had no impact on *Evans*. The court began by quoting from *Vaughan v. United States*, No. CR 2:94-511-RMG, 2021 WL 4993537, at *1 (D.S.C. Oct. 27, 2021), *appeal dismissed*, No. 21-7594, 2022 WL 1554986 (4th Cir. Jan. 31, 2022), for the

proposition that "*Borden* did not change Fourth Circuit law," which has "long held that a conviction predicated on a mens rea of recklessness does not satisfy the use of physical force requirement of the elements clause of § 924(c) and other statutes." *See* JA0610–0611; JA0647–0648. But this Circuit has never considered whether an offense that requires *only a conditional intent* to use force qualifies as a crime of violence. *Vaughan* involved a challenge to the 1992 version of the carjacking statute, which did not include the language that was interpreted in *Holloway* to require only conditional intent. *See* 2021 WL 4993537, at *1.[4] The relevant holding in *Vaughan*, in turn, relied on *McNeal*, 818 F.3d at 154–55, which interpreted the general-intent federal bank robbery statute, and *McNeal* relied on *Garcia v. Gonzales*, 455 F.3d 465, 468–69 (4th Cir. 2006), which considered an offense that allowed for conviction based on recklessness alone.

Furthermore, although the district court below claimed that the "conditional intent element added to the carjacking statute in 1994 bolstered *Vaughan*'s analysis," the court provided no explanation for this assertion. Instead, it simply repeated the

---

[4] *Compare* 18 U.S.C. § 2119 (West 2002) ("Whoever, with the intent to cause death or serious bodily harm[,] takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall. . . ."); *with* 18 U.S.C. § 2119 (West 1992) ("Whoever, possessing a firearm as defined in section 921 of this title, takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall. . . .").

holding in *Holloway* that the current carjacking statute requires a showing of conditional intent. JA0611; JA0648. But as explained above, both the *Borden* plurality opinion and that of Justice Thomas made clear the elements clause requires that a defendant: (1) cause or threaten physical harm against another, (2) *while simultaneously* intending or at least accepting the risk that his actions would so do. Conditional intent as defined in *Holloway* does not satisfy this test and this Circuit has never held otherwise.

Finally, the district court cited to *United States v. Mack*, 56 F.4th 303 (4th Cir. 2022), which held that *attempted* assault and battery under the South Carolina state code amounts to a crime of violence, even after *Borden*. JA0612 n.11; JA0649 n.11. Specifically, the district court cited *Mack* for the proposition that "it is hard to imagine how a person could 'recklessly offer' or 'recklessly attempt' to do something," as "both verbs connote intentional conduct." *Id.* (citing 56 F.4th at 306). But the statute at issue in *Mack* criminalized "*offer[ing] or attempt[ing]* to injure another person with the present ability to do so," whereas the district court here found that the only portion of the federal carjacking statute relevant to Appellants' case *excluded* attempted carjacking. *See supra* § I.B.1. And, as illustrated above, it is not "hard to imagine" how a person could recklessly intimidate a victim into relinquishing his vehicle in a manner that amounts to carjacking under § 2119.

In short, the lower court's opinion contains no sound basis for upholding

*Evans* in the wake of *Borden*. This Court should reverse the determination below and grant Appellants relief.

## II. Even Assuming Federal Carjacking Is a Crime of Violence, Appellants' § 924 Convictions Are Invalid Because Kidnapping Is Not a Crime of Violence.

As explained above, Mr. Fulks and Mr. Basham were both convicted of two separate crimes that potentially served as a predicate to their § 924 convictions: carjacking as defined by § 2119(2), and kidnapping as defined by § 1201(a). Specifically, Count 5 of the superseding indictment charged that Mr. Fulks and Mr. Basham had conspired to use and carry a firearm "in furtherance of crimes of violence . . . as charged in Counts 1 [carjacking resulting in death] and 2 [kidnapping resulting in death]." JA0157. Similarly, Count 6 charged that Mr. Fulks and Mr. Basham possessed and used a firearm "in furtherance of crimes of violence . . . as charged in Counts 1 and 2." JA0158.

The Government has since conceded that kidnapping under § 1201(a) is no longer a crime of violence under § 924(c) and thus cannot be used to sustain the validity of the § 924 convictions, and has "presume[d] without conceding" that kidnapping resulting in death is similarly not a crime of violence. The Government nevertheless maintains, and the district court below held, that because carjacking *could have* served as the predicate offense, and because federal carjacking qualifies as a crime of violence, the § 924 convictions stand. But even assuming that this Court

29

affirms the lower court's finding that federal carjacking satisfies the elements clause, the district court's determination that the § 924 convictions may be sustained on the basis of that offense alone is erroneous because none of the relevant convictions was *expressly predicated* on carjacking.

## A.  Mr. Fulks's § 924 convictions were not expressly predicated on the carjacking offense.

Mr. Fulks was convicted of both the § 924(c) charge and the § 924(o) charge pursuant to a guilty plea. Under this Court's caselaw, "when a defendant pleads guilty to a formal charge in an indictment which alleges conjunctively the disjunctive components of a statute, the rule is that the defendant admits to the least serious of the disjunctive statutory conduct." *United States v. Chapman*, 666 F.3d 220, 228 (4th Cir. 2012). Furthermore, this Court has expressly rejected the argument that a defendant who pleads guilty to allegations charged conjunctively necessarily admits to each allegation. *United States v. Vann*, 660 F.3d 771, 774–75 (4th Cir. 2011) (en banc) (per curiam) (explaining that a guilty plea admits only to the elements of "the least serious of the disjunctive statutory conduct, not the entirety of the conduct alleged in the conjunctive"). Here, both Counts 5 and 6 of the superseding indictment alleged two predicate offenses in the conjunctive, but only one of those two offenses was necessary to satisfy the statutory conduct. *See* § 924(c)(1)(A) (punishing using or possessing firearm "in relation to any crime of violence or drug trafficking crime"). Therefore, under the reasoning of *Vann* and *Chapman*, Mr. Fulks admitted

30

only to the less serious of the disjunctive statutory conduct, which in this case is the kidnapping offense.

In concluding otherwise, the court below failed to acknowledge either *Chapman* or *Vann*. Rather, the court relied on *United States v. Crawley*, 2 F.4th 257, 263 (4th Cir. 2021), which held that, where a defendant pleads guilty to a § 924 conviction based on one valid and one invalid predicate, the conviction will be sustained so long as the plea was "expressly based" on the valid predicate. In particular, the district court here concluded that, because the superseding indictment referred to both Counts 1 and 2 in support of the § 924 charges, the § 924 convictions "were 'expressly predicated' on one crime—carjacking—that remains a crime of violence." JA0614; JA0651 (quoting *Crawley*, 2 F.4th at 263). But a closer examination of the *Crawley* decision reveals that it was premised on facts not present in this case and does not in fact support the district court's holding.

In *Crawley*, like here, the defendant pled guilty to a § 924(c) charge that was based on two crimes: Hobbs Act conspiracy and a drug trafficking offense. However, in contrast to Mr. Fulks, Mr. Crawley entered into a written plea agreement which "unambiguously state[d]" that "he did use, carry and brandish a firearm during and in relation to a crime of violence [the Hobbs Act robbery] and a drug trafficking crime." *Id.* at 262, 267. And, during his plea colloquy, Mr. Crawley again expressly pled guilty to having "used, carried, and brandished a firearm or firearms during and

31

in relation to" *both* of the predicate offenses. *Id.* at 260. Hence, when Mr. Crawley subsequently challenged his § 924(c) conviction on the grounds that Hobbs Act conspiracy was no longer a crime of violence, this Court rejected his argument under *Chapman* and *Vann* because "Crawley (1) was charged with a § 924(c) violation that included a drug trafficking predicate, and (2) pleaded guilty to the charge *based on that predicate*." *Id.* at 267 (emphasis added). The same was true in the case of *United States v. Ogun*, Nos. 16-7450, 20-6578, 2022 WL 843899 (4th Cir. Mar. 22, 2022),[5] an unpublished decision also cited in the district court's opinion. *See* JA0613; JA0650. In *Ogun*, this Circuit upheld the defendants' § 924(c) convictions based on one valid and one invalid predicate where each defendant had entered into a written plea agreement, supported by a statement of facts, that left "no ambiguity" as to the "predicates that underlaid" the § 924(c) convictions. *Ogun*, 2022 WL 843899, at *2.

The same cannot be said here. Mr. Fulks never entered into a written plea agreement and his plea colloquy does not show that he pled guilty to committing either Count 5 or Count 6 based on both kidnapping and carjacking. To the contrary, during the colloquy, the trial court accurately described the § 924 charges as requiring proof that a firearm was used only in relation to a *single* crime of violence. For instance, as to Count 5, the court told Mr. Fulks:

> [I]f the case were to go to trial, I would instruct the jury that the

---

[5] The decision disposed of the consolidated appeals in *United States v. Ogun*, No. 16-7450, and *United States v. Dickerson*, No. 20-6578.

government would have to prove three essential elements beyond a reasonable doubt before the jury could return a verdict of guilty. . . . These elements are, number one, there was an agreement between two or more persons to use and carry firearms during and in relation to ***a crime of violence***; number two, you knew of the conspiracy; and number three, you knowingly and voluntarily became a part of the conspiracy.

JA0209 (emphasis added).

In describing Count 6, the court made it even more explicit that Mr. Fulks was only pleading to the charge based on one of the two predicate crimes:

The three elements are, number one, that you used, carried, or possessed a firearm; number two, that you used or carried the firearm during and in relation to, or possessed the firearm in furtherance of, ***a crime of violence***; and number three, ***the crime*** of violence was one that could be prosecuted in a court of the United States, ***such as*** count 1 ***or*** count 2 of the indictment here.

*Id.* at JA0210–0211 (emphasis added).

*Crawley* is further distinguishable on a separate ground. In *Crawley*, the prosecutor had dismissed the separate drug trafficking charge altogether in exchange for Mr. Crawley's agreement to plead guilty to the firearms charge that was predicated, in part, on the dismissed drug trafficking charge. Reasoning that Mr. Crawley had "received the benefit of his bargain, since he would have faced up to an additional 20 years in prison had the government not dismissed the drug trafficking crime," this Court determined that he "had no reason to expect—and we decline to grant him—a windfall based on later developments in the law that would invalidate one of the two predicates supporting his § 924(c) conviction." *Crawley*, 2

F.4th at 267. Mr. Fulks, by contrast, received nothing in exchange for his plea and was ultimately sentenced to death.

This Court's decision in *United States v. Wilson*, No. 16-4002, 2022 WL 1172165 (4th Cir. Apr. 20, 2022) (unpublished), is also distinguishable. As an initial matter, the defendant in *Wilson*—like those in *Crawley* and *Ogun*, and unlike Mr. Fulks—pled guilty to the contested § 924 charge pursuant to a written plea agreement that demonstrated the conviction was "expressly based" on both of the two alleged predicate offenses. *Id.* at *1, *2. Furthermore, the two predicate offenses in *Wilson*—one count of conspiracy to commit Hobbs Act robbery (the invalid predicate) and one substantive count of Hobbs Act robbery (the valid predicate)— arose from the exact same set of facts and were thus coextensive. *Cf. United States v. Steward*, 793 F. App'x 188, 190 (4th Cir. 2019) (upholding § 924 conviction where jury was erroneously instructed it could consider either Hobbs Act conspiracy or Hobbs Act robbery as predicate offense because the "conspiracy offense related solely to the robbery offense"). Mr. Fulks's carjacking and kidnapping charges, by contrast, were two separate offenses and did not involve the exact same set of facts.

Given the critical distinctions between this case, on the one hand, and *Crawley*, *Ogun*, and *Wilson*, on the other, the better analogy here is *United States v. Runyon*, 994 F.3d 192 (4th Cir. 2021). There, this Court considered Mr. Runyon's post-*Davis* challenge to a § 924(c) conviction that could have been based on a

34

carjacking resulting in death or conspiracy to commit murder for hire that resulted in death. Citing *Vann*, this Court held that, because the jury "was not asked to indicate in its verdict form" which of the two potential predicates it relied on for the § 924(c) conviction, "we must assume that Runyon could have been convicted by the jury's reliance *on either* predicate offense, requiring us to determine whether *each* predicate offense qualifies as a crime of violence." *Id.* at 201 (emphasis added). Even though the jury had convicted the defendant of both potential predicates, the Court did not affirm the § 924(c) conviction until after it had determined that *both* were crimes of violence under the elements clause. *Id.* at 201–03.

### B. Mr. Basham's § 924 convictions were not expressly predicated on the carjacking offense.

In the superseding indictment, Counts 5 and 6 alleged conspiracy to use a firearm and use of a firearm in furtherance of crimes of violence "as charged in Counts [1] and [2]." JA0157–0158. Mr. Basham was convicted of both § 924(c) and § 924(o) charges. The jury's verdict, however, did not specify whether it found use of a firearm in furtherance of Count 1, Count 2, or both. JA0488. Nor did the court instruct jurors that they must be unanimous as to which predicate offense they found. JA0480–0483, JA0484–0486.

The carjacking and kidnapping statutes are two separate statutes. It is unclear which formed the basis of the predicate felony for his § 924 convictions, or even whether the jury was unanimous as to their finding of one or both predicate offenses.

For example, six jurors could have found one predicate offense and six the other predicate offense. There is no basis to conclusively determine on which predicate offense jurors based their verdict, because neither the indictment nor the verdict form differentiates between the two predicate offenses. *See Runyon*, 994 F.3d at 201. Under these circumstances, if either carjacking resulting in death or kidnapping resulting in death is found not to be a crime of violence, then Mr. Basham's convictions on Counts 5 and 6 must be overturned.

Absent any support, it is unreasonable to presume that jurors were unanimous as to both predicates. Nor should this Court rely on the carjacking conviction to cure the constitutional infirmity of Mr. Basham's firearm convictions.

## III.    Appellants Should e Granted Relief from Their Death Sentences.

Because Appellants' convictions under § 924(c) and (o) are invalid, they are each entitled to a new penalty phase. The Eighth Amendment prohibits a death sentence based on factors that are "constitutionally impermissible or totally irrelevant to the sentencing process." *Zant v. Stephens*, 462 U.S. 862, 884–85 (1983). In *Johnson v. Mississippi*, the Supreme Court ruled that a death sentence must be vacated if it was based "on a reversed conviction." 486 U.S. 578, 585 (1988). There, the defendant had been sentenced to death based, in part, on a prior conviction for assault, which was overturned after the defendant was sentenced to death. Even though there were aggravating circumstances unrelated to the assault conviction that

36

remained undisturbed, the Supreme Court held that a new sentencing was constitutionally required because the jurors were exposed to, and improperly considered, information related to the invalid convictions, which "provided no legitimate support for the death sentence imposed on Petitioner." *Id.* at 586. Because there was even a "possibility" that the invalid conviction was "'decisive' in the 'choice between a life sentence and a death sentence,'" the sentence could not stand. *Id.* (internal citations omitted).

Similarly, in *United States v. Tucker*, the Court held that when the Government obtains a sentence partly on the basis of invalid convictions, the "real question" is "whether the sentence [on the valid convictions] *might have* been different" if the jury had known the others were "unconstitutionally obtained." 404 U.S. 443, 448 (1972) (emphasis added). In *Tucker*, a non-capital case, the Supreme Court affirmed the judgment of the Ninth Circuit ordering resentencing on a federal bank robbery conviction after two prior convictions known to the sentencer were later invalidated. *Id.* at 449. Finding that the 25-year federal sentence was imposed "at least in part upon misinformation of constitutional magnitude," the Court declared that it would be "callous to assume, now that the constitutional invalidity of the respondent's previous convictions is clear, that the [sentencer] will upon reconsideration 'undoubtedly' impose the same sentence." *Id.* at 447, 449 n.8.

Relying upon *Tucker*, federal appeals courts have repeatedly held that a

defendant must be resentenced on valid convictions where it "appear[s] possible that [the sentencer] *might have* relied in part on an unconstitutional conviction[.]" *James v. United States*, 476 F.2d 936, 937 (8th Cir. 1973) (citing *Tucker*) (emphasis added). *See also Bourgeois v. Whitley*, 784 F.2d 718, 721 (5th Cir. 1986) (holding that resentencing was required "unless it can be ascertained from the record that a [jury's] sentence on a valid conviction was not affected" by invalid convictions); *Jerkins v. United States*, 530 F.2d 1203, 1204 (5th Cir. 1976) ("[U]nless it can be ascertained from the record . . . that the District Court's sentence on a valid conviction was not affected by a subsequently invalidated conviction on another count of the indictment, the defendant must be resentenced on the valid conviction."); *United States v. Pinkney*, 551 F.2d 1241, 1246 n.37 (D.C. Cir. 1976) ("Where the appellate court could only speculate as to what sentence the [sentencer] would have imposed absent consideration of a count upon which the conviction or sentence is later vacated, a remand for resentencing on the remaining, valid counts is appropriate.").

Of course, the concern that a sentencing jury might have relied on unconstitutional convictions in reaching its verdict is heightened in a capital case, as "[t]he fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special 'need for reliability in the determination that death is the appropriate punishment[.]'" *Johnson v. Mississippi*, 486 U.S. at 584 (citations omitted). That is because "[t]he decision to

exercise the power of the State to execute a defendant is unlike any other decision citizens and public officials are called upon to make." *Mills v. Maryland*, 486 U.S. 367, 383–84 (1988). And the Supreme Court has made clear that "*[t]he possibility* that [a defendant's] jury conducted its task improperly certainly is great enough to require resentencing." *Id.* at 384 (emphasis added). Moreover, in a capital case, resentencing is required when there is a possibility that an invalid conviction influenced *even a single juror* to recommend death. *See, e.g.*, *Johnson v. Mississippi*, 486 U.S. at 586; *Kubat v. Thieret*, 867 F.2d 351, 373 (7th Cir. 1989) (finding violation of petitioner's Eighth and Fourteenth Amendment rights based on "substantial possibility that one or more" jurors was influenced by erroneous jury instruction).

The need for a resentencing when a prior conviction is subsequently invalidated is reinforced by the sentencing package doctrine, which holds that convictions cannot be viewed in isolation for the purposes of sentencing, but rather must be treated as part of an entire "sentencing package." *See United States v. Watkins*, 147 F.3d 1294, 1297 (11th Cir. 1998) (listing cases). The sentencing package doctrine has been largely accepted by federal courts, *id.* at 1295 n.3, and was adopted by the Fourth Circuit in *United States v. Hillary*, 106 F.3d 1170, 1173 (4th Cir. 1997) (holding that where a defendant had successfully attacked his § 924(c) conviction in collateral proceedings, the district court had the authority to

resentence him on the remaining charges, as the sentence must be viewed in the "aggregate"); *see also United States v. Smith*, 115 F.3d 241, 245 (4th Cir. 1997) (same, and explicitly endorsing "sentencing package theory"). And the Government itself has conceded in at least two cases that a resentencing is required on all of a defendant's remaining convictions when one or more convictions have been vacated under *Johnson (Samuel)*. *See United States v. Davis*, 139 S. Ct. 2319, 2336 (2019) (noting Government had "conceded that, if § 924(c)(3)(B) is held to be vague, then the defendants are entitled to a full resentencing, not just the more limited remedy the [Court of Appeals for the Fifth Circuit] granted them"); *United States v. Jenkins*, 15-3693 (7th Cir. July 24, 2019), Dkt. No. 84 (Government's Position Statement in Light of *United States v. Davis*) (conceding resentencing was the proper remedy following vacatur of § 924(c) convictions).

In its opinion below, the district court acknowledged this Court's acceptance of the sentencing package doctrine, but found its application was "not appropriate" in this case. JA0616; JA0653. In particular, the court found that neither Appellant's sentencing jury was "asked to sentence [him] as to the § 924 convictions" and therefore those convictions "were not part of the 'package' sent to" the sentencing jury in either case. JA0619; JA0656. But regardless of whether the juries were expressly tasked with sentencing on the § 924 counts, the record supports that each Appellant's jury considered and weighed those convictions in reaching the

40

appropriate sentence on the capital counts because the prosecution's case for death prominently included the gun convictions.

For instance, in Mr. Fulks's case, the court instructed the jurors that the defendant had pled guilty to eight charges, JA0362–0363, and the prosecutor told the jurors in opening statements that these eight counts included "conspiracy to possess firearms and use them in a crime of violence," and "using a firearm during a crime of violence," *id.* at JA0365–0366. The prosecutor went on, in summation, to rely heavily on the guns to portray Mr. Fulks as the crime spree's ringleader, who acted jointly with his co-defendant and had the necessary intent to establish his eligibility for the death penalty. *See, e.g.*, JA0374, JA0377–0379, JA0397, JA0414–0415, JA0433, JA0438–0441. Furthermore, the prosecution illustrated the importance of the guns to the case for death by introducing a number of firearms as trial exhibits. The court sent them into the jury room, where their physical presence dramatically and tangibly reminded the jurors of the key role they had played. JA0447.

Likewise, in Mr. Basham's case the record supports a reasonable likelihood that jurors relied in part on the unconstitutional convictions in Counts 5 and 6 in deciding to sentence Mr. Basham to death.

On the Government's motion, the court instructed the jury at the outset of the penalty sentencing hearing that it "may refer back to all of the evidence that was

admitted in the first trial, the *guilt phase*." JA0495 (emphasis added). In closing

argument, the prosecutor also urged jurors to find the statutory aggravating factors

based on the evidence and convictions from the guilt phase. JA0513. The spillover

did not stop there.

Also during closing argument, in urging the jury to find the threshold intent

to support a death sentence, the prosecutor told the jury to consider the gun

convictions:

> I submit on the testimony and evidence you have heard, and based on
> the verdicts you have found, three and four are no-brainers. No-
> brainers. Look at number four. The defendant intentionally and
> specifically engaged in an act of violence. Ladies and gentlemen, you
> have convicted Brandon Basham and, he has admitted in statements that
> he knowingly engaged in the act of kidnapping and the act of carjacking
> armed with a deadly weapon, knowing that the act created a grave risk
> of death to a person, being Alice Donovan.

JA0513. The prosecutor continued:

> Ladies and gentlemen, anytime you rob somebody, or carjack
> somebody, or kidnap somebody at gunpoint . . . that is creating grave
> risk. By definition, armed carjacking, armed kidnapping is a risk of
> death to any citizen in this state. By his admissions, by your verdict, by
> your conviction of Brandon Basham, you have found intent level four.

JA0513–0514. The prosecutor further hammered home: And just in case there was

any doubt, the prosecutor stated that "[t]he gun provides lethal force." JA0515.

During this same closing argument, the prosecutor described Mr. Basham's

"general character of violence" by asserting: Think about all of the – First of all, he

armed himself with a gun. He was armed with a gun the entire time. That is the

testimony. . . . He is the one who continuously had himself a gun. JA0520. The prosecutor mentioned guns, gunpoint or being armed at least twenty times between the closing argument and the reply closing argument. JA0497–0550, JA0551–0557. All this was bookended by the court's final instruction that "[t]he evidence [the jury] may consider includes all evidence received during both the guilt and the penalty phase of [the] trial." JA0560.

It defies common sense that given the arguments made by the prosecutor and the instructions by the court, that the jury did not consider the gun convictions, and all the facts supporting that conviction in deciding death for Mr. Basham, especially because the prosecutor and the court urged the jury to do so.

Because the government relied extensively on the firearms offenses at the penalty phase, there is a high possibility that the jury considered the facts supporting the firearms convictions and as such Mr. Basham should be resentenced. *See James v. United States,* 476 F.2d 936, 937 (8th Cir. 1973). Under the circumstances in this case, it is not possible for this Court to find "with certainty" that Mr. Basham's invalid § 924(c) and § 924(o) convictions did not influence the jury's decision to impose a death sentence. *See Strader v. Troy*, 571 F.2d 1263, 1267 (4th Cir. 1978). Mr. Basham is entitled to a new capital penalty phase hearing free of the taint of the constitutionally invalid § 924(c) and § 924(o) convictions.

Hence, in both the case of Mr. Fulks and that of Mr. Basham, the record fails

to eliminate, as it must, the "possibility" that the "jury conducted its task improperly." *Mills*, 486 U.S. at 384. It is difficult to imagine that the jurors' knowledge of the heavily stressed gun crimes did not affect a single juror's decision to impose a death sentence. And, although the lower court attempted to distinguish *Johnson v. Mississippi* on the ground that "[t]he jury in that case received only evidence of the conviction, not the factual support for the crime," JA0620 n.16; JA0657 n.16, the detailed factual support relied upon by the prosecution at sentencing makes it *more* likely that the jury here was improperly influenced by the invalid convictions, not less. The district court also reasoned that there could be no error because the factual support for the gun convictions would have been introduced in any event. JA0620 n.16; JA0657 n.16. But this ignores that each Appellant's sentencing jury knew that, in addition to the two capital counts, the defendant had been convicted of *six other criminal counts*. Whether or not these convictions were specifically charged as aggravating factors, it cannot be assumed that the sheer number of convictions attached to each defendant was not considered significant by a single juror. Therefore, this Court should grant Appellants relief from their death sentences, and order that they be given new penalty phases.

44

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's order, vacate Appellants' convictions under § 924(c) and (o) and their death sentences, and order that each Appellant receive a new penalty phase trial.


Respectfully submitted,

| | |
|---|---|
| */s/ Peter Williams* | */s/ Leticia Marquez* |
| Peter Williams | Leticia Marquez |
| Assistant Federal Defender | Lindsey Layer |
| Federal Community Defender Office | Assistant Federal Public Defenders |
| for the Eastern District of | Federal Public Defender's Office |
| Pennsylvania | District of Arizona |
| 601 Walnut Street, Suite 545 West | 407 W. Congress Street, Suite 501 |
| Philadelphia, PA 19106 | Tucson, Arizona 85701 |
| (215) 928-0520 | (520) 879-7622 |
| | |
| *Counsel for Appellant, Chadrick Fulks* | *Counsel for Appellant, Brandon Basham* |


Dated: July 21, 2023

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This brief complies with the type volume limit of Fed. R. App. P. 32(a)(7)(b) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this brief contains 11,186 words.

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface, in 14-point Times New Roman font.

*/s/ Peter Williams*
PETER WILLIAMS

Dated: July 21, 2023

## <u>CERTIFICATE OF SERVICE</u>

I, Peter Williams, hereby certify that on this date I served the foregoing

document by ECF filing on the following party:

Kathleen Stoughton, Esq.
Office of the United States Attorney
1441 Main Street, Suite 500
Columbia, SC 29201


*/s/ Peter Williams*
PETER WILLIAMS

Dated: July 21, 2023