No. 23-2 (L)

---

# In the United States Court of Appeals for the Fourth Circuit

————————

UNITED STATES OF AMERICA,

Appellee,

v.

CHADRICK E. FULKS AND BRANDON BASHAM,

Appellants.

————————

On Appeal from the United States District Court
for the District of South Carolina

————————

RESPONSE BRIEF FOR THE UNITED STATES

CAPITAL CASE

ADAIR F. BURROUGHS
United States Attorney
District of South Carolina

KATHLEEN M. STOUGHTON
Assistant U.S. Attorney
District of South Carolina

NICOLE M. ARGENTIERI
Acting Assistant Attorney General

LISA H. MILLER
Deputy Assistant Attorney General

THOMAS E. BOOTH
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Penn. Ave.; Room 1511
Washington, DC 20530
(202) 514-5201
Thomas. Booth@usdoj.gov

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................iii

STATEMENT OF THE ISSUES ...................................................................2

STATEMENT OF THE CASE........................................................................2

      A.     Procedural History...........................................................2

      B.     Statement of Facts .........................................................4

      C.     Trial Proceedings...........................................................6

      D.     Appellants' Second Section 2255 Motion..........................7

SUMMARY OF ARGUMENT .....................................................................11

ARGUMENT ...........................................................................................13

     I.    CARJACKING RESULTING IN DEATH UNDER 18 U.S.C. § 2119(3) IS A CRIME OF VIOLENCE UNDER SECTION 924(C)(3)(A)................................................13

      A.     Standard of Review.......................................................14

      B.     Relevant Statute ...........................................................14

      C.     Discussion....................................................................15

            1.    Carjacking is divisible into "completed" carjacking and attempted carjacking ......................16

            2.    Evans Survives Taylor ..........................................20

            3.    Section 2119(3) survives Borden.............................24

     II.    BASHAM AND FULKS WERE PROPERLY CONVICTED OF THEIR SECTION 924 CRIMES.................27

      A.     Standard of Review.......................................................27

      B.     Discussion....................................................................29

1.    Fulks........................................................................ 29

2.    Basham ................................................................. 31

III.   BASHAM    AND    FULKS    WERE    PROPERLY
       SENTENCED TO DEATH....................................................... 32

       A.    Standard of Review........................................................ 32

       B.    Discussion.................................................................... 32

CONCLUSION....................................................................... 39

CERTIFICATE OF COMPLIANCE ........................................... 40

# TABLE OF AUTHORITIES

**Cases**

*Alvarado-Linares* v. *United States*,
   44 F.4th 1334 (11th Cir. 2022)................................................................. 16

*Borden* v. *United States*,
   141 S. Ct. 1817 (2021).................................................................9, 12, 24

*Camreta* v. *Greene*,
   563 U.S. 692 (2011) ............................................................................. 20

*Carter* v. *United States*,
   530 U.S. 255 (2000) ............................................................................. 26

*Davis* v. *Ayala*,
   576 U.S. 257 (2015)..........................................................................27, 38

*Dorsey v. United States,*
   76 F.4th 1277 (9th Cir. 2023) .............................................................. 18

*Estell* v. *United States*,
   924 F.3d 1291 (8th Cir. 2019)............................................................... 23

*Foster* v. *United States*,
   996 F.3d 1100 (11th Cir. 2021)............................................................. 28

*Gonzalez* v. *Duenas-Alvarez*,
   549 U.S. 183 (2007) ............................................................................. 21

*Greenlaw* v. *United States*,
   554 U.S. 237 (2008) ............................................................................. 35

*Johnson* v. *Mississippi*,
   486 U.S. 578 (1988) ............................................................................. 34

*Johnson* v. *United States*,
   576 U.S. 591 (2015).............................................................................. 7

*Jones* v. *United States*,
 526 U.S. 227 (1999) ................................................................. 17

*Jones* v. *United States*,
 527 U.S. 373 (1999) ................................................................. 34

*Marshall* v. *Lonberger*,
 459 U.S. 422 (1983) ................................................................. 33

*Martinez* v. *Sessions*,
 893 F.3d 1067 (8th Cir. 2018) ................................................. 19

*Mathis* v. *United States*,
 579 U.S. 500 (2016) ................................................... 15, 16, 19

*Ovalles* v. *United States*,
 905 F.3d 1300 (11th Cir. 2018), cert. denied, 139 S. Ct. 2716 (2019) ........ 25

*Parke* v. *Raley*,
 506 U.S. 20 (1992) ................................................................... 27

*Samia* v. *United States,*
 599 U.S. 635 (2023) ................................................................. 34

*Tuggle* v. *Netherland*,
 79 F.3d 1386 (4th Cir. 1996) ............................................ 34, 38

*United States* v. *Ali*,
 991 F.3d 561 (4th Cir. 2021) ................................................... 10

*United States* v. *Ali,*
 995 F.3d 561 (4th Cir. 2021) ................................................... 17

*United States* v. *Allred*,
 942 F.3d 641 (4th Cir. 2019) ............................................ 16, 18

*United States* v. *Aragon*,
 983 F.2d 1306 (4th Cir. 1993) ................................................. 37

*United States* v. *Bailey*,
 819 F.3d 92 (4th Cir. 2016) ..................................................... 25

iv

*United States* v. *Basham,*
561 F.3d 302 (4th Cir. 2009), cert. denied, 560 U.S. 938 (2010) ........ passim

*United States* v. *Basham,*
789 F.3d 358 (4th Cir. 2015), cert. denied, 577 U.S. 1230 (2016)................ 3

*United States* v. *Brown,*
74 F.4th 527 (7th Cir. 2023) .................................................................... 27

*United States* v. *Burtons,*
696 Fed. Appx. 372 (10th Cir. 2017)....................................................... 19

*United States* v. *Carr,*
946 F.3d 598 (D.C. Cir. 2020)..........................................................23, 26

*United States* v. *Casteel,*
663 F.3d 1013 (8th Cir. 2011)................................................................ 17

*United States* v. *Castleman,*
572 U.S. 157 (2014) ..........................................................................19, 22

*United States* v. *Chapman,*
666 F.3d 220 (4th Cir. 2012) ................................................................. 28

*United States* v. *Crawley,*
2 F.4th 257 (4th Cir. 2021) .................................................................... 28

*United States* v. *Davis,*
53 F.3d 168 (4th Cir. 2022) ................................................................... 15

*United States* v. *Draven,*
77 F.4th 307 (4th Cir. 2023) ........................................................... passim

*United States* v. *Evans,*
848 F.3d 242 (4th Cir. 2017) ........................................................8, 11, 15

*United States* v. *Fell,*
531 F.3d 197 (2d Cir. 2008)................................................................... 37

*United States* v. *Fulks,*
454 F.3d 410 (4th Cir. 2006), cert. denied, 551 U.S. 1147 (2007).......4, 7, 37

v

*United States* v. *Fulks*,
   683 F.3d 512 (4th Cir. 2012), cert. denied, 571 U.S. 1090 (2013)................ 4

*United States* v. *Green*,
   67 F.4th 657 (4th Cir. 2023) ........................................................22, 24

*United States* v. *Harrison*,
   56 F.4th 1325 (11th Cir. 2023)............................................................ 19

*United States* v. *Higgs,*
   353 F.3d 281 (4th Cir. 2003) .............................................................. 38

*United States* v. *Holloway*,
   526 U.S. 1 (1999)............................................................................. 25

*United States* v. *Jackson*,
   32 F.4th 278 (4th Cir. 2022) .............................................................. 14

*United States* v. *Jackson*,
   918 F.3d 467 (6th Cir. 2019) .............................................................. 23

*United States* v. *Johnson*,
   587 F.3d 625 (4th Cir. 2009) .............................................................. 37

*United States v. Lawson*,
   677 F.3d 629 (4th Cir. 2012) .............................................................. 32

*United States* v. *Mack*,
   56 F.4th 303 (4th Cir. 2022) .............................................................. 27

*United States* v. *McBride*,
   826 F.3d 293 (6th Cir. 2016) .............................................................. 26

*United States* v. *McDaniel*,
   85 F.4th 176 (4th Cir. 2023) .........................................................15, 27

*United States* v. *McNeal*,
   818 F.3d 141 (4th Cir. 2016) ...............................................17, 21, 22, 23

*United States* v. *Patterson*,
   68 F.4th 402 (8th Cir. 2023)............................................................... 28

*United States* v. *Pratt*,
  351 F.3d 131 (4th Cir. 2003) ............................................................. 8, 16

*United States* v. *Redd*,
  85 F.4th 153 (4th Cir. 2023) .............................................................. 15

*United States* v. *Reed*,
  48 F.4th 1082 (9th Cir. 2022) ............................................................ 28

*United States* v. *Resendiz-Ponce*,
  549 U.S. 102 (2007) ........................................................................... 16

*United States* v. *Rumley*,
  952 F.3d 538 (4th Cir. 2020) ............................................................. 23

*United States* v. *Runyon*,
  994 F.3d 192 (4th Cir. 2021) ........................................................20, 30

*United States* v. *Said*,
  26 F.4th 653 (4th Cir. 2022) .............................................................. 28

*United States* v. *Small*,
  944 F.3d 490 (4th Cir. 2019) ............................................................. 25

*United States* v. *Stitt*,
  250 F.3d 878 (4th Cir. 2001) ............................................................. 36

*United States* v. *Stoney,*
  62 F.4th 108 (3d Cir. 2023) ...........................................................28, 30

*United States* v. *Taylor*,
  142 S. Ct. 2015 (2022)................................................................. passim

*United States* v. *Vann*,
  660 F.3d 771 (4th Cir. 2011) (en banc)............................................... 29

*United States* v. *Ventura*,
  864 F.3d 301 (4th Cir. 2017) ............................................................. 35

*United States* v. *Walker*,
  934 F.3d 375 (4th Cir. 2019) ........................................................9, 14, 27

vii

*United States* v. *Warren*,
  No. 22-11091, 2023 WL 3161253 (11th Cir. May 1, 2023)........................ 26

*United States* v. *Wilson*,
  880 F.3d 80 (3d Cir.), cert. denied, 137 S. Ct. 830 (2017).......................... 26

*United States* v. *Worthen*,
  60 F.4th 1066 (7th Cir. 2023) ................................................................. 17

**Statutes and Rules**

18 U.S.C. § 32.......................................................................................... 17

18 U.S.C. § 111........................................................................................ 27

18 U.S.C. § 371.......................................................................................... 3

18 U.S.C. § 922.......................................................................................... 3

18 U.S.C. § 924............................................................................... 2, 3, 6, 14

18 U.S.C. § 1201 .................................................................................... 3, 6

18 U.S.C. § 2119 ............................................................................... passim

18 U.S.C. § 3231 .......................................................................................... 1

18 U.S.C. § 3581 ...................................................................................... 18

18 U.S.C. § 3584 ...................................................................................... 18

18 U.S.C. § 3591 .................................................................................. 7, 36

18 U.S.C. § 3593 ...................................................................................... 36

18 U.S.C. § 3594 ...................................................................................... 35

18 U.S.C. § 3595 ...................................................................................... 34

21 U.S.C. § 846 ........................................................................................ 17

28 U.S.C. § 1291 ........................................................................................ 1

28 U.S.C. § 2253 ............................................................................ 1

28 U.S.C. § 2255 ....................................................................1, 3, 4

**Other Authorities**

2 *Federal Jury Practice and Instructions*............................................. 18

2 LaFave*, Substantive Criminal Law* (3d ed.) ............................16, 17

2B O'Malley, Grenig, Lee, *Federal Jury Practice and Instructions* (6th ed) ....................................................................................... 18

Eric Wm. Ruschky, *Pattern Jury Instructions for Federal Criminal Cases*, *District of South Carolina* (2020 Online Ed.)...................... 19

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

No. 23-2 (L)

———————

UNITED STATES OF AMERICA,

Appellee,

v.

CHADRICK E. FULKS AND BRANDON BASHAM,

Appellants.

———————

On Appeal from the United States District Court
for the District of South Carolina

———————

RESPONSE BRIEF FOR THE UNITED STATES

CAPITAL CASE

———————

This is a consolidated appeal from final judgments in cases under 28 U.S.C. § 2255. The district court (Anderson, J.) had jurisdiction under 18 U.S.C. § 3231 and 28 U.S.C. § 2255. The judgments were entered on January 10, 2023. Basham and Fulks filed their notices of appeal on March 7, 2023. JA 662-663. This Court has jurisdiction under 28 U.S.C. §§ 1291, 2253.

1

## STATEMENT OF THE ISSUES

1.  Whether carjacking resulting in death under 18 U.S.C. § 2119(3) is a crime of violence under the elements clause of 18 U.S.C. § 924(c)(3)(A).

2.  Whether Basham and Fulks' substantive firearm and firearm conspiracy convictions under Sections 924(c) and (o) that alleged carjacking and kidnapping as predicate crimes of violence were based on a valid predicate crime of violence.

3.  If carjacking is not a predicate crime of violence, or if the Section 924(c) and (o) convictions were predicated on kidnapping, whether the proper remedy is to vacate the Section 924 convictions alone or to vacate the death sentences imposed on Basham and Fulks' substantive kidnapping and carjacking convictions.

## STATEMENT OF THE CASE

### A.     Procedural History

Basham and Fulks were convicted of multiple violent crimes and sentenced to death after they abducted Alice Donovan from her car, raped her, and then murdered her in South Carolina.  See *United States* v. *Basham*, 561 F.3d 302 (4th Cir. 2009), cert. denied, 560 U.S. 938 (2010).

In the United States District Court for the District of South Carolina, a federal grand jury charged Basham and Fulks with carjacking resulting in death,

in violation of 18 U.S.C. § 2119(3) (Count 1); kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a)(1) (Count 2); interstate transportation of a stolen vehicle, in violation of 18 U.S.C. § 2312 (Count 3); conspiracy to commit carjacking, kidnapping, interstate transportation of a stolen vehicle, felon in possession of a firearm, and possession of stolen firearms, in violation of 18 U.S.C. § 371 (Count 4); conspiracy to use and carry firearms during and in relation to, and to possess firearms in furtherance of, crimes of violence, in violation of 18 U.S.C. § 924(o) (Count 5); using and carrying firearms during and in relation to, and possessing firearms in furtherance of, crimes of violence, in violation of 18 U.S.C. § 924(c) (Count 6); possessing a firearm following a felony conviction, in violation of 18 U.S.C. § 922(g) (Count 7); and possession of stolen firearms, in violation of 18 U.S.C. § 922(j) (Count 8).  JA 148-160. Counts 1 and 2 exposed Basham and Fulks to the death penalty.  JA 161-163.

a.  Basham went to trial.  A jury found Basham guilty on all eight counts and sentenced him to death on the substantive carjacking and kidnapping counts.  The district court sentenced Basham to 744 months of imprisonment on the other six counts.  This Court affirmed.  *Basham*, 561 F.3d 302.

In 2011, Basham filed a motion to vacate his sentence under 28 U.S.C. § 2255.  The district court denied the motion.  This Court affirmed.  *United States v. Basham*, 789 F.3d 358 (4th Cir. 2015), cert. denied, 577 U.S. 1230 (2016).

3

b. Fulks pleaded guilty to all eight charges. A jury sentenced Fulks to death on the substantive carjacking and kidnapping counts. The district court sentenced Fulks to 744 months of imprisonment on the other six counts. This Court affirmed. *United States* v. *Fulks*, 454 F.3d 410 (4th Cir. 2006), cert. denied, 551 U.S. 1147 (2007).

In 2008, Fulks filed a motion to vacate his sentence under 28 U.S.C. § 2255. The district court denied the motion. This Court affirmed. *United States* v. *Fulks*, 683 F.3d 512 (4th Cir. 2012), cert. denied, 571 U.S. 1090 (2013).

## B.    Statement of Facts

On November 5, 2002, Basham and Fulks escaped from a local detention center in Kentucky and began a multi-state crime spree that resulted in the murder of Alice Donovan in South Carolina. JA 588-593. The two men first stole a truck from a motorist and then drove to a trailer in Indiana where Tina Severance, a friend of Fulks, and another woman lived. JA 589-590. The four of them drove to West Virginia. JA 590. In West Virginia, Basham and Fulks went to a local mall where they intended to break into cars and steal goods. JA 590. At the mall, the two men abducted Samantha Burns from her car. JA 590.

4

Basham raped Burns. JA 590-591. Afterwards, the two men murdered Burns and set fire to her car. JA 591.[1]

On November 12, Fulks, Basham, and the two women drove to South Carolina. JA 591. The next day, the two men broke into cars and stole purses. JA 591. On November 14, Basham and Fulks tried to burglarize a residence outside Conway, South Carolina, but they fled after they were seen by Carl Jordan, a relative of the owner. JA 591. Both men fired shots at Jordan while fleeing. JA 591.

Basham and Fulks, armed with a pistol, stole a pickup truck and drove it to a Wal-Mart in a mall in Conway. JA 591-592. There, they saw Alice Donovan park her BMW in a mall parking lot. JA 591-592. Basham entered Donovan's car and forced Donovan to drive to the back of the parking lot to pick up Fulks. JA 592. Basham and Fulks drove Donovan to a secluded area where they both raped her. JA 592. Basham took Donovan into the woods and returned by himself to meet Fulks sometime later. JA 592.

The two men returned their motel and then fled to West Virginia. JA 592. Basham went to Kentucky where he tried to carjack a woman at a local mall.

---

[1] In the United States District Court for the Southern District of West Virginia, Basham and Fulks pleaded guilty to carjacking resulting in the death of Burns, in violation of Section 2119(3), and were sentenced to life imprisonment. JA 591.

JA 592. A police officer confronted Basham, who repeatedly fired his pistol at the officer as he tried to flee. *Basham*, 561 F.3d at 312. Basham was arrested shortly thereafter. JA 592-593. When Fulks heard that Basham had been arrested, he fled to Indiana where the police arrested him at a relative's residence. JA 592-593. Later, both men admitted that Donovan had been killed. JA 592.

## C.    Trial Proceedings

Count 1 charged Basham and Fulks with carjacking resulting in Donovan's death, in violation of 18 U.S.C. § 2119(3). JA 148. Count 2 charged them with kidnapping resulting in Donovan's death, in violation of 18 U.S.C. § 1201(a)(1). JA 149. Count 5 charged them with a firearms conspiracy offense "in furtherance of crimes of violence * * * as charged in Counts 1 and 2," in violation of 18 U.S.C. § 924(o). JA 157. Count 6 charged them with a substantive firearm offense in furtherance of "crimes of violence * * * as charged in Counts 1 and 2," in violation of 18 U.S.C. § 924(c). JA 158. On the death-eligible carjacking and kidnapping counts, the government alleged that the kidnapping and death of Donovan was a statutory aggravating factor under Section 3592(c)(1). JA 161-162.

6

Fulks pleaded guilty to all counts as charged. JA 208-209. The Basham jury returned a general verdict of guilty on all charges, including Counts 5 and 6. JA 487-489.

At the penalty-phase proceedings, Basham and Fulks each sought to avoid the death penalty by arguing that he lacked the specific intent to murder Donovan because his partner murdered her. *Fulks*, 454 F.3d at 418; *Basham*, 561 F.3d at 315. In imposing the death sentences, the penalty juries found that Basham and Fulks intentionally engaged in an act of violence that created a grave risk of death, under 18 U.S.C. § 3591(a)(2)(D). JA 460 (Fulks), JA 564 (Basham).[2] As to both offenses, those juries also found as a statutory aggravating factor that the death of Donovan occurred during the commission of a kidnapping under Section 3591(c)(1); it also found various non-statutory aggravating circumstances. JA 448-469 (Fulks); JA 563-586 (Basham).

### D.    Appellants' Second Section 2255 Motion

In 2016, after the Supreme Court decided *Johnson* v. *United States*, 576 U.S. 591 (2015), this Court authorized Basham and Fulks to file second or successive motions under Section 2255. JA 595. In their motions, they raised a claim for

---

[2] The government did not definitely prove how Donovan was murdered. Fulks told the FBI that Basham had admitted to him that he had strangled Donovan to death. JA 258. See also JA 517 (government argument in Basham case).

7

the first time ever that their Section 924 convictions were not supported by a valid predicate crime of violence. JA 595. After extensive pleadings, the parties narrowed the issues as follows: (1) whether carjacking resulting in death is a predicate crime of violence under the elements clause of Section 924(c)(3)(A); (2) assuming that it is, whether appellant's Section 924 convictions were based on carjacking resulting in the death of Donovan, and (3) assuming that carjacking is not a crime of violence or the convictions were not based on carjacking, whether the remedy is to vacate Basham and Fulks' convictions and sentences on those counts alone, or whether it should vacate their sentences on all counts, including the death sentences on Counts 1 and 2. JA 595-599.

The district court denied Basham and Fulks' motions. First, the district court held that carjacking resulting in death under Section 2119(3) is a crime of violence under Section 924(c)(3)(A), because the Fourth Circuit had so held in *United States* v. *Evans*, 848 F.3d 242 (4th Cir. 2017). JA 600-610. The court explained that Section 2119(3) is "divisible" into completed carjacking and attempted carjacking. JA 606-607. The court reasoned that an attempt offense is a separate offense from the completed offense. JA 607 (citing *United States* v. *Pratt*, 351 F.3d 131 (4th Cir. 2003)). The district court also observed that the Supreme Court had distinguished between completed Hobbs Act robbery and

8

attempted Hobbs Act robbery in *United States* v. *Taylor*, 142 S. Ct. 2015 (2022). JA 607-608.

The district court ruled that because Section 2119(3) is a divisible offense, the modified categorical approach applied to determine whether Basham and Fulks were convicted of completed carjacking or an attempt. JA 608-609.[3] The district court then determined that the trial records showed that they were charged and convicted of carjacking, not attempted carjacking. JA 609.

The district court also ruled that *Borden* v. *United States*, 141 S. Ct. 1817 (2021), which held that a crime of violence does not include a crime that can be committed with a mens rea of recklessness, was inapposite because carjacking requires the intentional use or threatened use of force. JA 610-612.

Second, the district court held that Basham and Fulks' Section 924 convictions were valid because they were based in part on the valid carjacking offenses, even though kidnapping is not a valid predicate crime of violence. JA 612-615; see *United States* v. *Walker*, 934 F.3d 375, 378-379 (4th Cir. 2019) (kidnapping under Section 1201(a)(1) does not categorically require the use of force). The court noted that a 924 conviction that is based on multiple predicate offenses is valid if one predicate crime is valid. JA 613-614 (citing *United States*

---

[3] The district court stated that because Section 2119 is a divisible offense, it did not have to decide whether *Evans* remained good law after *Taylor*. JA 607.

9

v. *Ali*, 991 F.3d 561 (4th Cir. 2021)). JA 614-615. The court stated that Fulks' guilty plea was expressly predicated on the carjacking crime. JA 613-614. As to Basham, the court stated that because the kidnapping and carjacking predicate crimes were "intertwined and co-extensive," there was no reasonable likelihood that the jury based its verdict only on the kidnapping offense, rather than the carjacking offense. JA 614-615.

Third, the district court ruled that even if the Section 924 convictions were invalid, the proper remedy would be to vacate the convictions on those counts only, but that vacatur of Basham and Fulks' death sentences was unwarranted. JA 615-616. The district court rejected their argument that the "sentencing package" doctrine required reversal of their death sentences because that doctrine applies to sentences resulting from a single, interrelated process. JA 618-619. The court stated that the death sentences on the kidnapping and carjacking charges were imposed by the juries, whereas the remaining sentences (including for the Section 924(c) and (o) offenses) were imposed by the district court. JA 616-619. The district court emphasized that the penalty phase juries did not consider the Section 924 convictions as aggravating factors that justified the death penalty under the district court's instructions. JA 616-618.

The district court rejected Basham and Fulks' arguments that the penalty juries implicitly considered the facts of their Section 924 convictions because

10

they heard evidence that they used weapons during their offenses. JA 619. The court emphasized that Basham and Fulks' use of firearms was "inextricably intertwined" with the death penalty counts, and that they had not pointed to any specific evidence that would have been inadmissible if the Section 924 offenses had not been charged. JA 620. The court found that Fulks and Basham were not prejudiced by the references to their use of firearms during the death penalty proceedings. JA 621.

The district court granted Basham and Fulks a certificate of appealability on the three issues briefed and argued in this appeal. JA 622.

## SUMMARY OF ARGUMENT

1. Carjacking resulting in death under 18 U.S.C. § 2119(3) is a crime of violence under Section 924(c)(3)(A). First, carjacking is divisible into completed carjacking and attempted carjacking. Second, the record shows that Basham and Fulks were convicted of completed carjacking, not attempted carjacking.

In *United States* v. *Evans*, 848 F.3d 242 (4th Cir. 2017), this Court held that carjacking constitutes a crime of violence under Section 924(c)(3)(A). *Evans* has not been undermined by *United States* v. *Taylor*, 142 S. Ct. 2015, 2020 (2022), which stated that the government may not use a "realistic probability" test to determine whether an offense qualifies as a crime of violence, because *Evans* did not use a "realistic probability" test.

11

Nor has *Evans* been undermined by *Borden* v. *United States*, 141 S. Ct. 1817 (2021), which held that a crime that can be committed with a reckless intent does not qualify as a crime of violence, because Section 2119 is a specific intent crime.

2. Basham and Fulks were properly convicted of their Section 924 offenses. On collateral review, a conviction is presumptively valid. When a defendant is convicted of a Section 924 offense based on a valid and an invalid predicate crime of violence, he must show that there is more than a reasonable possibility that the jury convicted him based on the invalid predicate offense; mere uncertainty is not enough. Here, Basham and Fulks' Section 924 convictions show only at most uncertainty as to whether their convictions rest on the invalid kidnapping predicate. Further, Basham and Fulks were convicted of a carjacking offense, further proof that their Section 924 convictions were not based on kidnapping predicates alone. Finally, the kidnapping and carjacking offenses were inextricably intertwined with each other, additional evidence that their Section 924 convictions did not rest solely on the kidnapping predicates.

3. Even if the Court reverses Basham and Fulks' Section 924 convictions on Counts 5 and 6, it should not vacate their death sentences on Counts 1 and 2. There is no reasonable likelihood that the penalty-phase juries considered the fact that Basham and Fulks were convicted under Section 924 in imposing the death sentences on Counts 1 and 2. The district court instructed the juries that

12

they could only consider a death sentence on Counts 1 and 2 under certain specific circumstances that did not include consideration of the Section 924 convictions. The juries presumably followed those instructions. In addition, the juries' special verdict forms do not mention the Section 924 convictions, which buttresses the presumption that they followed the district court's instructions.

It is immaterial that the penalty-phase juries considered evidence that Basham and Fulks carried firearms in evaluating the carjacking and kidnapping charges on Counts 1 and 2. That firearm evidence was relevant to show how they carjacked and kidnapped Donovan as well as some of the charged aggravating circumstances. In addition, Basham and Fulks never disputed that they carried firearms during the crime spree or during their carjacking and kidnapping of Donovan. Further, the juries knew that Basham and Fulks had been convicted of additional firearm offenses, so the fact of the Section 924 convictions was cumulative to those other convictions.

## ARGUMENT

## I.  CARJACKING RESULTING IN DEATH UNDER 18 U.S.C. § 2119(3) IS A CRIME OF VIOLENCE UNDER SECTION 924(c)(3)(A)

Basham and Fulks argue (Br. 7-29) that their Section 924 convictions are invalid because the indictment alleged that the predicate crimes of violence were carjacking and kidnapping, but neither crime is a predicate crime of violence

13

under the elements clause of 18 U.S.C. § 924(c)(3)(A).  The government agrees

that kidnapping is not a predicate crime of violence, see *United States* v. *Walker*,

934 F.3d 375, 378-379 (4th Cir. 2019), but Basham and Fulks' Section 924

convictions should be affirmed because carjacking is a valid predicate crime of

violence.

### A.    Standard of Review

Whether an offense constitutes a crime of violence under Section

924(c)(3)(A) is reviewed de novo.  *United States* v. *Draven*, 77 F.4th 307, 313 (4th

Cir. 2023).[4]

### B.    Relevant Statute

The carjacking statute, 18 U.S.C. § 2119, provides that:

> [W]hoever, with the intent to cause death or serious bodily harm[,] takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall--
> (1) be fined under this title or imprisoned not more than 15 years, or both,
> (2) if serious bodily injury ... results, be fined under this title or imprisoned not more than 25 years, or both, and
> (3) if death results, be fined under this title or imprisoned for any number of years up to life, or both, or sentenced to death.

---

[4]  During the Section 2255 proceedings, the government waived procedural defenses to Basham and Fulks' claims after *United States* v. *Jackson*, 32 F.4th 278, 283 n.3 (4th Cir. 2022).  JA 635.

This Court has held that Section 2119 is a crime of violence under Section 924(c)(3)(A). *United States* v. *Evans*, 848 F.3d 242 (4th Cir. 2017).

## C. Discussion

To determine whether a defendant's prior felony conviction qualifies as a "crime of violence" under the elements clause of Section 924(c)(3)(A), courts employ a categorical approach that focuses on the elements of the crime instead of the particular facts underlying the conviction. *United States* v. *Taylor*, 142 S. Ct. 2015, 2020 (2022); *Mathis* v. *United States*, 579 U.S. 500, 505 (2016). If the least culpable conduct punished by the offense can be committed without the use of force, then that crime is not categorically a crime of violence. See *United States* v. *Davis*, 53 F.3d 168, 171 (4th Cir. 2022).

On the other hand, a modified categorical approach is used if the statute of conviction lists the elements of the crime in the alternative. *Mathis*, 579 U.S. at 505. If the statutory alternatives "differ" significantly from one another, that implies that they are different crimes. *United States* v. *Redd*, 85 F.4th 153, 165 (4th Cir. 2023). If the modified categorical approach applies, a reviewing court may look beyond the applicable statute and take a "peek" at the record documents for the sole and limited purpose of determining whether the listed statutory alternatives are elements of the offense. *Mathis*, 579 U.S. at 518; *United States* v. *McDaniel*, 85 F.4th 176, 188 (4th Cir. 2023).

15

The modified categorical approach does not apply, however, if the statute, rather than "list[ing] multiple elements disjunctively," instead "enumerates various factual means of committing a single element." *Mathis*, 579 U.S. at 506. See *United States* v. *Allred*, 942 F.3d 641, 648-649 (4th Cir. 2019) (describing categorical and modified categorical approaches).

In this case, the Court needs to determine whether the federal carjacking statute is divisible into completed carjacking and attempted carjacking because, under the reasoning of *Taylor*, attempted carjacking no longer qualifies as a crime of violence sufficient to support a Section 924(c) conviction. That is because an attempt to threaten (rather than to use) force to commit a carjacking does not fall within Section 924(c)(3)(A). See generally *Alvarado-Linares* v. *United States*, 44 F.4th 1334, 1346-1347 (11th Cir. 2022).

> 1.    *Carjacking is divisible into "completed" carjacking and attempted carjacking*

Section 2119 is divisible into carjacking "committed by force and violence or by intimidation" (completed carjacking) and "attempt[ed]" carjacking. That is because attempted carjacking is a separate offense from completed carjacking. Indeed, since the common law, attempt has been viewed as a crime distinct from the completed crime. See *United States* v. *Resendiz-Ponce*, 549 U.S. 102, 106 (2007); *United States* v. *Pratt*, 351 F.3d 131, 135 (4th Cir. 2003); 2 LaFave, *Substantive Criminal Law*, §§ 11.2-11.4 (3d ed.). The elements of attempt are a

16

specific intent to commit another crime and a substantial step taken to commit that offense. *Taylor*, 142 S. Ct. at 2020; *United States* v. *Ali,* 995 F.3d 561, 574 n.5 (4th Cir. 2021); LaFave, *Substantive Criminal Law*, § 11.3. Thus, an attempt crime is a separate offense from an underlying crime because the substantial step element is not an element of the underlying crime. See *Taylor*, 142 S. Ct. at 2021 (distinguishing between completed Hobbs Act robbery and attempted Hobbs Act robbery); *Draven*, 77 F.4th at 318; *United States* v. *Worthen*, 60 F.4th 1066, 1070 (7th Cir. 2023).[5]

In the federal criminal code, the crime of attempt is sometimes listed in a separate statutory provision from the statutory provisions that define the completed crimes, *e.g.,* 21 U.S.C. § 846 (attempt or conspiracy to commit certain drug offenses in Title 21), or in a statutory subsection of a statute that defines the completed crime. *E.g.*, 18 U.S.C. § 32(a)(8) (attempt or conspiracy to destroy aircraft).

---

[5] Basham and Fulks' reliance (Br. 15-16) on *Jones* v. *United States*, 526 U.S. 227 (1999), is misplaced because *Jones* held only that the provisions in Section 2119(1)-(3) define separate offenses, not mere sentencing enhancements. *Jones* says nothing as to whether Section 2119 is divisible into completed carjacking and attempted carjacking for purposes of applying the categorical approach. Similarly, neither *United States* v. *McNeal*, 818 F.3d 141 (4th Cir. 2016), nor *United States* v. *Casteel*, 663 F.3d 1013, 1019 (8th Cir. 2011), address the issue, other than to note that Section 2119 reaches attempt offenses.

In addition, 18 U.S.C. § 3584(a) provides that consecutive sentences may not be imposed for an attempt and for another offense that was the sole objective of the attempt. Because an attempt conviction requires a distinct, yet concurrent, sentence from the completed crime, see 18 U.S.C. § 3581(a), Section 3584(a) implies that an attempt and a completed crime are distinct offenses.

The standard federal pattern jury instructions also treat attempted carjacking as a distinct offense from completed carjacking because they bracket "[attempted to take]" separately from "[took]" a car. See 2B O'Malley, Grenig, Lee, *Federal Jury Practice and Instructions*, § 58:03 (6th ed). They also treat attempt as a distinct offense from a completed offense as a general matter. See 2 *Federal Jury Practice and Instructions*, §§ 21:01-21:04. See also *Dorsey v. United States,* 76 F.4th 1277, 1284 n.2 (9th Cir. 2023) (witness tampering statute barring completed crime and attempted crime was divisible into those crimes).

Further, the fact that under Section 2119, attempted carjacking is separated from completed carjacking by a comma is additional evidence that Congress intended attempted carjacking to be a distinct offense from completed carjacking. *E.g.*, *Allred*, 942 F.3d at 649.

Finally, because attempt has historically been viewed as a distinct crime from a completed offense, Congress presumably intended to incorporate that

18

interpretation of attempt when it enacted Section 2119. See generally *United States* v. *Castleman*, 572 U.S. 157, 162 (2014).

Basham and Fulks argue (Br. 18) that attempted carjacking is merely a means to commit carjacking because Section 2119 assigns the same penalties for the different statutory alternatives. Although *Mathis* stated that if the different alternatives have different punishments, they are elements, not means, see *Mathis*, 579 U.S. at 518, the inverse is not true: different statutory crimes can have the same punishment. See *United States* v. *Harrison*, 56 F.4th 1325, 1333 (11th Cir. 2023); *Martinez* v. *Sessions*, 893 F.3d 1067, 1071 (8th Cir. 2018); *United States* v. *Burtons*, 696 Fed. Appx. 372, 378 (10th Cir. 2017). Thus, the absence of a separate punishment for attempted carjacking is immaterial.

Basham and Fulks' further reliance (Br. 18) on one commentator's carjacking jury instructions applicable to South Carolina federal trials is also misplaced. Those instructions provide only that the elements of simple carjacking include proof that the "defendant took, or attempted to take, a motor vehicle." See Eric Wm. Ruschky, *Pattern Jury Instructions for Federal Criminal Cases*, *District of South Carolina* § 2119, pp. 384-385 (2020 Online Ed.). But that instruction does not carry the weight Basham and Fulks assign to it, because the separation of the term "took" from the term "attempted to take" by a comma, essentially follows the structure of Section 2119, which also separates attempted

19

carjacking from completed carjacking by a comma. Those instructions therefore do not imply that attempted carjacking is merely a means by which the offense is committed. And, in any event, the Ruschky instructions represent the views of a single commentator in a single federal district. They do not override the standard carjacking instructions given in the federal courts.[6]

Because Section 2119 is a divisible crime, the district court properly examined the record to determine whether Basham and Fulks were convicted of attempted carjacking or the completed offense. That record clearly shows that they were charged and convicted of completed carjacking. Indeed, the term "attempt" does not appear in the relevant documents. See JA 148 (indictment), JA 194-196 (Fulks' guilty plea); JA 248-250 (factual proffer at Fulks' guilty plea hearing); JA 487 (Basham verdict).

### 2.    *Evans Survives Taylor*

In *Evans*, this Court held that carjacking is a crime of violence under Section 924(c)(3)(A).[7] Basham and Fulks argue (Br. 20-22) that *Evans* does not

---

[6] Basham and Fulks' reliance (Br. 19-20) on three district court cases in which the juries were instructed in terms of "took or attempted to take" a car is misplaced because the jury instructions in those three cases do not establish a national, uniform, view that attempted carjacking is merely a means of committing carjacking. Cf. *Camreta* v. *Greene*, 563 U.S. 692, 709 n.7 (2011) (district court decisions are not binding precedent).

[7] This Court has repeatedly affirmed *Evans*. *E.g.*, *Draven*, 77 F.4th at 311; *United States* v. *Runyon*, 994 F.3d 192, 201 (4th Cir. 2021).

survive *Taylor* because *Evans* relied in part on *United States* v. *McNeal*, 818 F.3d 141 (4th Cir. 2016), in defining the statutory term "intimidation," but *McNeal* erred under *Taylor* by allegedly relying on a "realistic probability" test to determine the scope of the bank robbery statute. That contention is meritless because *Evans* did not mention, much less rely on, a "realistic probability" test.

*Taylor* held that attempted Hobbs Act robbery is not a crime of violence under standard interpretive principles. In reaching that conclusion, *Taylor* rejected the government's argument that the defendant in that case was required to present "empirical evidence" to counter the government's assertion that "most attempted Hobbs Act robbery prosecutions" involve a communicated threat of force. 142 S. Ct. at 2024. The Court stressed that Taylor had identified cases in which the government had prosecuted individuals for attempted Hobbs Act robbery without proving a communicated threat. Then, it rejected the government's reliance on *Gonzalez* v. *Duenas-Alvarez*, 549 U.S. 183 (2007), which involved the application of an immigration statute to a prior state court conviction, on the grounds that the "realistic probability" test discussed in that case "required a federal court to make a judgment about the meaning of a state statute," and so "it made sense to consult how a state court would interpret its own State's laws." After *Taylor*, this Court has held that "the realistic probability" test is an inappropriate way to determine whether a predicate

21

[federal] offense satisfies" the elements clause of Section 924(c)(3)(A). *United States* v. *Green,* 67 F.4th 657, 669 (4th Cir. 2023).

In *McNeal*, this Court held that federal bank robbery is a crime of violence under the elements clause of Section 924(c)(3)(A) because the use of intimidation means the threat of the use of physical force, which is covered by Section 924(c)(3)(A) ("has as an element the use, attempted use, *or threatened use* of physical force against the person or property of another"). 818 F.3d at 154-155. *McNeal* rejected the defendants' argument that a person could commit bank robbery by means other than the use of physical force, such as by threatening to poison the teller or exposing him to a hazardous gas, stating that committing a bank robbery by means of poison would be "rare," and that the defendants "have not identified a single bank robbery prosecution where the victim feared bodily harm from something other than violent physical force." *Ibid*.

*McNeal*'s rejection of the defendant's use-of-poison hypothetical on the ground that bank robberies committed by poison would be rare parallels the Supreme Court's rejection of a similar argument regarding the use of poison to commit a violent offense in *Castleman*. There, the Supreme Court held that the "use" of force includes both the direct and indirect uses of physical force, so that a defendant's use of poison to commit a crime would constitute a forbidden "use" of physical force. 572 U.S. at 170. After *Castleman*, another court of

22

appeals has held that the intimidation requirement in Section 2113(a) is satisfied despite the possibility that a defendant might threaten a bank teller with poison without relying on a "realistic probability" test. See *United States* v. *Carr*, 946 F.3d 598, 604 (D.C. Cir. 2020). See also *United States* v. *Rumley*, 952 F.3d 538, 549 (4th Cir. 2020) (citing *Castleman*'s rejection of the use-of-poison hypothetical in unlawful wounding case).

In addition, other courts of appeals have held that the intimidation element in Section 2119 requires the use or threatened use of physical force without mentioning either a "realistic probability" test or a robber's use of poison to commit the robbery. See *Estell* v. *United States*, 924 F.3d 1291, 1293 (8th Cir. 2019); *United States* v. *Jackson*, 918 F.3d 467, 485-486 (6th Cir. 2019).

In sum, *McNeal*'s brief statements that bank robberies committed by poison would be rare and that the defendants had not identified a single bank robbery prosecution where the victim feared bodily harm from poison were not essential to its holding because, after *Castleman,* a court may reject a use-of-poison argument without using a "realistic probability" analysis. *McNeal*'s holding that "intimidation entails a threat to use physical force" (848 F.3d at 156) was an independent ruling as to the scope of Section 2113(a) under standard interpretative principles; it did not depend on a "realistic probability" test.

More importantly, *Evans* held that carjacking satisfies the definition of "crime of violence" in Section 924(c)(3)(A) without referring to a "realistic probability" test. To be sure, *Evans* relied on the general reasoning of *McNeal* to interpret the statutory term "intimidation" in Section 2119(a), but it did not rely on bank robberies or carjackings committed by poison, and it not specifically address the defendant's argument to that effect. Indeed, that *Evans* did not cite to a "realistic probability" test demonstrates that its interpretation of Section 2119 was based solely on standard principles of statutory construction, not on empirical evidence as to the government's actual prosecution practices for Section 2119. See *Green*, 67 F.4th at 669-670 (rejecting argument that prior Fourth Circuit decision conflicted with *Taylor* where that Fourth Circuit decision "never applied or even acknowledged the realistic probability test"). In sum, *Evans* was not tainted by the alleged analytical error in *McNeal*.

### 3.    *Section 2119(3) survives* Borden

Basham and Fulks argue (Br. 22-29) that Section 2119(3) is not a crime of violence because it can allegedly be committed with a reckless state of mind, but under *Borden* v. *United States*, 141 S. Ct. 1817 (2021), an offense that can be committed by recklessness does not qualify as a crime of violence. That argument is meritless.

24

Section 2119 does not criminalize the kind of reckless conduct encompassed by the statute at issue in *Borden*.  A conviction for carjacking requires proof of "intent to cause death or serious bodily harm."  18 U.S.C. § 2119.  See *United States* v. *Small*, 944 F.3d 490, 500-501 (4th Cir. 2019); *United States* v. *Bailey*, 819 F.3d 92, 97-98 (4th Cir. 2016) (vacating carjacking conviction where the evidence established only "generalized recklessness and desperation" rather than "specific intent, conditional or otherwise").  Section 2119 thus requires "pro[of] that at the moment the defendant demanded or took control over the driver's automobile the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car (or, alternatively, if unnecessary to steal the car)."  *United States* v. *Holloway*, 526 U.S. 1, 12 (1999).[8] Although carjacking can be committed by "intimidation," a defendant may be convicted only if "the intimidating act was conducted 'with the intent to cause death or serious bodily harm.'"  *Ovalles* v. *United States*, 905 F.3d 1300, 1303 (11th Cir. 2018) (per curiam) (quoting 18 U.S.C. § 2119), cert. denied, 139 S. Ct. 2716 (2019); see *Holloway*, 526 U.S. at 11 ("While an empty threat, or intimidating bluff, would be sufficient to satisfy the ['intimidation'] element,

---

[8]  Although *Holloway* noted that Section 2119 contains a "conditional intent," it also explained that "conditional'" and "unconditional" intent are both species of "wrongful intent," and that an intent to kill, in the alternative, is nevertheless an intent to kill.  526 U.S. at 9, 11.  See *Small*, 944 F.3d at 498.

25

such conduct, standing on its own, is not enough to satisfy § 2119's specific intent element.").

Furthermore, a defendant cannot be convicted of carjacking (or a related bank robbery) offense unless he knowingly or purposely used force or the threat of force to obtain property. See *Carter* v. *United States*, 530 U.S. 255, 268 (2000). Although intimidation is defined "at least partly in objective terms of what a reasonable, ordinary person would find intimidating," the defendant must also know that his actions would be so perceived, "which separates this offense from crimes of mere negligence." *Carr*, 946 F.3d at 606.[9] Because both the bank robbery statute in Section 2113 and the carjacking statute in Section 2119 are both defined in part by the term "intimidation," the term "intimidation" means the same thing in both statutes.

Recently, the Eleventh Circuit ruled that carjacking remains a crime of violence after *Borden*. See *United States* v. *Warren*, No. 22-11091, 2023 WL 3161253 (11th Cir. May 1, 2023) (unpublished). See also *United States* v. *Brown*,

---

[9] A defendant who knowingly robs or attempts to rob a bank by engaging in conduct that he knows "'would create the impression in an ordinary person that resistance would be met by force'" is properly described as having committed a threatened use of physical force within the meaning of Section 924(c)(3)(A) and similar provisions. *United States* v. *Wilson*, 880 F.3d 80, 87 n.8 (3d Cir.) (quoting *United States* v. *McBride*, 826 F.3d 293, 295-296 (6th Cir. 2016)), cert. denied, 137 S. Ct. 830 (2017). The same is true for carjacking under Section 2119.

26

74 F.4th 527, 531 (7th Cir. 2023) (analyzing Illinois carjacking statute; "it is difficult, if not impossible, to conceive of taking a motor vehicle from another person in any manner other than knowingly and purposefully"); *McDaniel*, 85 F.4th at 187-188 (federal assault offense in 18 U.S.C. § 111(b) survives *Borden* because it requires an intent to assault); *United States* v. *Mack*, 56 F.4th 303, 307 (4th Cir. 2022) (offering or attempting to injure another is a specific intent crime).

## II.    BASHAM AND FULKS WERE PROPERLY CONVICTED OF THEIR SECTION 924 CRIMES

Basham and Fulks contend (Br. 29-36) that even if carjacking is a predicate crime of violence, their Section 924 convictions are invalid because they may have been based on the kidnapping predicate, which is not a crime of violence. See *Walker*, 934 F.3d at 378-379.  They are incorrect.

### A.    Standard of Review

On collateral attack, a verdict is presumed to be valid.  *Parke* v. *Raley*, 506 U.S. 20, 31 (1992).  If there is an error in the verdict, the harmless error standard on collateral attack requires a defendant to show that the error had a substantial and injurious effect or influence in determining the jury's verdict.  See *Davis* v. *Ayala*, 576 U.S. 257, 268 (2015).  That requires more than a reasonable possibility that the error was harmful.  See *Draven*, 77 F.4th at 319 (citing *Davis*).

27

In a contested Section 924 case that is based on a valid and an invalid predicate crime of violence, the defendant must establish more than a reasonable possibility that the jury found him guilty only on the invalid predicate crime of violence. *Draven*, 77 F.4th at 319. Thus, mere uncertainty as to whether the jury relied on an invalid predicate does not show that the error harmed the defendant. *Ibid.*; *United States* v. *Said*, 26 F.4th 653, 661 (4th Cir. 2022). And if the jury convicted the defendant on additional substantive crimes involving firearms, that further reduces the likelihood that the jury relied on the invalid predicate. *Said*, 26 F.4th at 662. Further, if the trial record shows that the two predicate crimes were "inextricably intertwined," the defendant has not established that the jury relied *solely* on the invalid predicate. *United States* v. *Patterson*, 68 F.4th 402, 422-423 (8th Cir. 2023); *United States* v. *Reed*, 48 F.4th 1082, 1090-1091 (9th Cir. 2022); *Foster* v. *United States*, 996 F.3d 1100, 1107-1108 (11th Cir. 2021).

In a guilty plea case, the relevant record, including the indictment, a plea agreement (if any), and the defendant's admissions during the Rule 11 hearing may establish that he pleaded guilty to a valid predicate. See *United States* v. *Crawley*, 2 F.4th 257, 262-266 (4th Cir. 2021); *United States* v. *Stoney,* 62 F.4th 108, 112-113 & n.3 (3d Cir. 2023) (collecting cases).[10]

---

[10] Fulks' reliance (Br. 30) on this Court's cases in *United States* v. *Chapman*, 666 F.3d 220 (4th Cir. 2012), and *United States* v. *Vann*, 660 F.3d 771 (4th Cir. 2011)

### B.    Discussion

#### 1.    *Fulks*

Fulks' guilty pleas to the Section 924 offenses in Counts 5 and 6 (JA 208-210, JA 329-330) were not based solely on the invalid predicate kidnapping offense. First, during the Rule 11 hearing, Fulks pleaded guilty to the Section 924 counts after the district court specifically advised him that the charged crimes of violence on the Section 924 counts were the offenses charged in Counts 1 *and* 2. JA 208-210. But even if Fulks' guilty pleas were less clear about the underlying predicates, it would show at most only uncertainty as to whether his pleas were based solely on a kidnapping predicate. That is insufficient to show prejudice under *Draven* and *Said*.

Second, Fulks also pleaded guilty to the substantive carjacking offense on Count 1. JA 195-196, JA 227-228, JA 324 (plea of guilty).[11] During the plea

---

(en banc), for the proposition that in a case in which the indictment alleges in the conjunctive the disjunctive elements of a statute, a defendant's guilty plea admits only to the least culpable disjunctive statutory element is misplaced as that rule applies on direct appeal. Because this case arises on collateral attack, *Draven* controls Basham and Fulks' claim that their Section 924 convictions were based on the invalid kidnapping predicate.

[11]    Fulks appears to argue (Br. 31-32) that under *Crawley,* a guilty-plea defendant's admission to a valid predicate crime of violence must occur in a plea agreement. That is incorrect. *Crawley* merely listed a plea agreement as a relevant record that may considered to determine whether a Section 924(c) offense is based on an invalid predicate offense. It did not hold that the defendant's admission of guilt to a valid predicate offense must be found in a

hearing, Fulks also admitted that the kidnapping and carjacking of Donovan essentially occurred at the same time and place, and that Basham carried a pistol during those offenses. JA 248-250.[12] Also, the penalty jury's special verdict form as to the carjacking offense, which found that the death of Donovan occurred during Fulks' commission of a kidnapping crime, is further proof that the kidnapping and carjacking offenses were factually intertwined and that the Section 924 convictions were not based solely on the kidnapping predicates. JA 450.[13]

---

plea agreement. See *Stoney*, 62 F.4th at 112 (defendant admitted to valid predicate crime of violence during the change of plea hearing).

Fulks also argues (Br. 32-33) that the district court advised Fulks that the Section 924 counts merely required the government to prove a single "crime of violence" because it used the singular term "a" crime of violence at one point (JA 209) and the expression "such as count 1 or count 2" at another point. JA 210. That argument is meritless. First, the district court expressly advised Fulks that Counts 5 and 6 alleged the two crimes of violence charged in Count 1 *and* Count 2 in the indictment. JA 208, JA 210 (emphasis supplied). Second, the district court's subsequent use of singular terms to describe the crime of violence was immaterial because those terms did not identify the crime of violence at issue and therefore did not advise Fulks that he was pleading guilty based solely on kidnapping. At most, there is only uncertainty as to the identity of the crime of violence, but uncertainty does not show prejudice. See *Draven*, 77 F.4th at 319.

[12] The district court and the parties relied on Fulks' pretrial admission to the FBI to establish a factual predicate for his guilty plea. JA 246.

[13] Fulks argues (Br. 34-35) that under *Runyon*, 994 F.3d at 202-203, a collateral attack court evaluating a Section 924 conviction that is based on multiple predicate crimes of violence must examine each predicate to determine whether it qualifies as a crime of violence. But *Draven* and *Said did* examine the Section

> ### 2.    *Basham*

Basham has not shown that the jury's general verdicts on the Section 924 counts were based solely on the invalid predicate kidnapping crime. At most, the verdicts show only uncertainty as to the identity of the predicates, but that is insufficient to show prejudice. Further, the jury's verdict on the substantive carjacking charge on Count 1 is further proof that the verdict on the Section 924 counts were not limited to the invalid kidnapping predicate. See *Draven*, 77 F.4th at 319 (jury found defendant guilty of carjacking and Section 924(j) offense that including carjacking as a predicate).[14]

Second, the evidence at trial showed that the kidnapping and carjacking offenses were inextricably intertwined because they occurred at the same time and place. At Basham's trial, the government produced a store surveillance video that captured Basham and Fulks as they carjacked and kidnapped Donovan at the mall parking lot. See *Basham*, 561 F.3d at 315. Relatedly, with

---

924 convictions in their cases and then concluded that a defendant must show more than the mere possibility that the general verdict was based on an invalid predicate. Here, Fulks has not shown more than an abstract possibility that his Section 924 convictions were based on invalid kidnapping predicates, especially as he was also convicted of the substantive carjacking offense on Count 1.

[14] Indeed, at the guilt phase, Basham effectively conceded that if the jury found him guilty on Counts 1 and 2, that "basically satisfies" Count 6. JA 473-474. Basham further conceded that he and Fulks possessed the firearms charged in Counts 7 and 8. JA 471-474.

respect to the carjacking offense in Count 1, the penalty phase jury expressly found that Donovan's death occurred during the commission of a kidnapping as a statutory aggravating factor under Section 3592(c)(1).  JA 565.

Third, at trial, Basham conceded that he had kidnapped *and* carjacked Donovan with a pistol; his defense was that he lacked the specific intent to kill Donovan because Fulks was allegedly the actual killer of Donovan.  *Basham*, 561 F.3d at 312, 315.

## III.   BASHAM AND FULKS WERE PROPERLY SENTENCED TO DEATH

Basham and Fulks contend (Br. 36-44) that their death sentences on Counts 1 and 2 must be vacated if this Court vacates their Section 924 convictions for lack of a valid predicate crime of violence.  That is incorrect.

### A.   Standard of Review

This Court reviews a harmless error determination de novo.  *United States v. Lawson*, 677 F.3d 629, 641 (4th Cir. 2012).

### B.   Discussion

The jury was only tasked with determining Basham and Fulks' sentences for Counts 1 and 2, the substantive carjacking and kidnapping counts for which a sentence of death may be imposed.  The juries' verdicts of death on Counts 1 and 2 were not influenced by Basham and Fulks' convictions on the Section 924 offenses.  The district court instructed the penalty-phase juries that they were

32

authorized to impose the death penalty only on Counts 1 and 2 and that the relevant factors in making that decision were Basham and Fulks' ages (Section 3591), the threshold intent factor (Section 3591(2)), the statutory aggravating factor (Section 3592(c)), any non-statutory aggravating factors, and any mitigating factors. JA 362-364 (Fulks); JA 491, JA 558; SA 4-32 (Basham). The district court did not instruct the juries that Basham and Fulks' Section 924 convictions were relevant factors in determining whether to sentence them to death. Indeed, the district court instructed the juries that they could not identify any aggravating factors on their own. JA 617, JA 619.[15]

The juries presumably followed those instructions and unanimously recommended a death sentence on Counts 1 and 2 based on the factors that they were authorized to consider and did not consider the fact that Basham and Fulks were also convicted on the Section 924 counts. See *Marshall* v. *Lonberger*, 459 U.S. 422, 438 n.6 (1983) (noting prior case in which a jury presumably followed a trial court's instruction to consider the defendant's prior conviction only for

---

[15]    In Fulks' penalty phase, the prosecutor also argued to the jury that it was only authorized to impose the death penalty on Counts 1 and 2, even though Fulks had pleaded guilty to eight counts, including the Section 924 counts. JA 365. In addition, at Fulks' request, the district court only submitted Counts 1 and 2 of the indictment to the jury at the penalty phase. JA 434.

In Basham's case, the prosecutor stated that Basham was subject to the death penalty on the substantive kidnapping and carjacking offenses in arguing as to the statutory gateway factors that the jury needed to find. SA 2-3.

sentencing enhancement); *Samia* v. *United States,* 599 U.S. 635, 646-647 (2023) (juries presumably follow instructions); *Jones* v. *United States*, 527 U.S. 373, 394 (1999) (presumption of following instructions in a capital case).[16]

That presumption is buttressed by the juries' special verdict forms, which set forth only those aggravating circumstances and mitigating factors that the district court stated were relevant to its determination to impose the death penalty. The special verdict forms do not mention the Section 924 convictions. JA 448-469 (Fulks); JA 563-586 (Basham).

Basham and Fulks' analogy (Br. 39-40) to the "sentencing package" doctrine is misplaced. The "sentencing package" doctrine involves a district court's multiple sentences on multicount convictions, followed by a successful attack on some, but not all, of them. In that circumstance, the appellate court may vacate the entire sentence on all counts so that, on remand, the sentencing

---

[16] Basham and Fulks' reliance (Br. 36-39) on cases in which the Supreme Court or a court of appeals reversed a sentence because it was improperly based on a defendant's prior conviction, *see, e.g.*, *Johnson* v. *Mississippi*, 486 U.S. 578 (1988), is inapposite because those cases did not involve a jury instruction that barred the jury from relying on the fact of the defendant's prior conviction to determine his sentence. In addition, those cases cannot be viewed as requiring automatic reversal of a federal death sentence based on an error at the penalty phase. Indeed, 18 U.S.C. § 3595(c)(2) requires harmless error review on direct appeal from a death sentence. And this Court applies harmless error review to death penalty cases on collateral attack. *E.g.*, *Tuggle* v. *Netherland*, 79 F.3d 1386, 1388 (4th Cir. 1996).

court can reconfigure the sentencing plan to ensure that the ultimate sentence satisfies the sentencing factors in 18 U.S.C. § 3553(a).  See *Greenlaw* v. *United States*, 554 U.S. 237, 253-254 (2008); *United States* v. *Ventura*, 864 F.3d 301, 309 (4th Cir. 2017).

This case does not involve a district court's aggregated sentences on multiple counts imposed under the Sentencing Guidelines.  Rather, it involves unanimous jury recommendations of death sentences on Count 1 and 2, which are binding on the district court, see 18 U.S.C. § 3594, and the district court's independent term-of-year sentences on the remaining six counts under the Guidelines.  Neither the juries nor the district court imposed a "package" of death and term-of-years sentences on Basham and Fulks.  There is therefore no "package" of dependent sentences imposed solely by a court that needs correcting, even if this Court reverses the Section 924 convictions.

Basham and Fulks' additional argument (Br. 40-44) that the penalty-phase juries improperly considered evidence that they carried firearms during their crime spree is also meritless.  The penalty phase juries properly considered the firearm evidence.  First, Basham's carrying of a firearm during the carjacking and kidnapping of Donovan, *e.g.*, *Basham*, 561 F.3d at 312, was intrinsic evidence on the kidnapping and carjacking charges on Counts 1 and 2 because it showed how they kidnapped and carjacked Donovan.  See *United States* v. *Stitt*,

35

250 F.3d 878, 888 (4th Cir. 2001) (firearm evidence properly admitted under an "inextricably intertwined" theory). In determining the appropriate punishment for carjacking and kidnapping, the juries were allowed to consider the facts and circumstances underlying those crimes, including Basham and Fulks' use of firearms, even if the use of firearms to commit carjacking and kidnapping did not constitute an additional crime under Section 924. Indeed, Basham and Fulks' further argument (Br. 41-42) that the penalty juries were improperly instructed that they could refer back to all of the trial evidence overlooks that 18 U.S.C. § 3593(c) specifically authorizes this practice. See *Basham*, 561 F.3d at 334 (finding no plain error in the admission of the trial transcript at the penalty phase). The death sentences imposed by the juries are independent of the term-of-years sentences imposed by the district court and would not be affected by this Court's reversal of the Section 924 convictions.

Second, the firearm evidence was independently relevant to support the government's arguments that the multiple statutory intent factors under 18 U.S.C. § 3591(a)(2) were satisfied because Basham and Fulks intentionally killed Donovan. The firearm evidence was also highly relevant as it established some of the non-statutory aggravating factors, including the kidnapping, carjacking, and death of Burns (NSA #2) the shootings at Jordan (NSA #3) and Basham's

36

attempt to murder the Kentucky police officer by shooting at him (Basham NSA #5).  JA 566, JA 578.

Basham and Fulks thus err in arguing (Br. 42-43) that the prosecutors improperly referred to the firearm evidence during closing argument.  Because the firearm evidence was independently relevant on the aggravating factors, the prosecutors properly referred to that evidence during argument.  JA 396-400 (Fulks), JA 513-514 (Basham).  *E.g.*, *United States* v. *Fell*, 531 F.3d 197, 221 (2d Cir. 2008) (prosecutor's argument at death penalty phase was reasonable); *United States* v. *Johnson*, 587 F.3d 625, 632 (4th Cir. 2009) (counsel have wide latitude in closing argument).  Because the firearm evidence was properly admitted, the district court did not err in submitting that evidence to the jury in Fulks' case.  JA 447.  See *United States* v. *Aragon*, 983 F.2d 1306, 1309 (4th Cir. 1993).

Third, Basham and Fulks never disputed that they carried firearms during their crime spree at the penalty phases of their trials.  Rather, as a strategic matter, they each argued that he should be spared the death penalty because it was his partner who murdered Donovan.  See *Basham*, 561 F.3d at 315; *Fulks*, 454 F.3d at 418.  See also JA 283-288 (Fulks' admissions during the Rule 11 hearing).

37

Even if the penalty-phase juries considered the fact of the Section 924 convictions, any error was harmless because Basham and Fulks have not met *Davis'* "more than reasonable possibility" standard here. See *Davis*, 576 U.S. at 268; *Tuggle,* 79 F.3d at 1388. See also *United States* v. *Higgs,* 353 F.3d 281, 319-320 (4th Cir. 2003) (admission of prior drug offense at death penalty trial was harmless on direct appeal).

To be sure, firearm possession is not an element of either kidnapping under Section 1201(a)(1) or carjacking when death results under Section 2119(3), but as noted above, the evidence of Basham and Fulks' use of firearms during their crime spree was relevant on multiple theories, that evidence was overwhelming, and they conceded that they used firearms during their crime spree.

Further, the penalty juries knew that Basham and Fulks had also been convicted of the firearm offenses under Sections 922(g)(1) (Count 7) and 922(j) (Count 8), so they would not have been influenced by the fact the appellants were also convicted on the Section 924 offenses. The fact of the Section 924 convictions was therefore cumulative to the fact that Basham and Fulks were properly convicted of additional firearm offenses. For these reasons, the Section 924 convictions did not contribute to the juries' decisions to impose the death sentences here.

38

**CONCLUSION**

The judgments should be affirmed.

Respectfully submitted.

ADAIR F. BURROUGHS
United States Attorney
District of South Carolina


KATHLEEN M. STOUGHTON
Assistant U.S. Attorney
District of South Carolina

NICOLE M. ARGENTIERI
Acting Assistant Attorney General

LISA H. MILLER
Deputy Assistant Attorney General

/s/ Thomas E. Booth
THOMAS E. BOOTH
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Suite 1511
Washington, DC 20530
(202) 514-5201
Thomas.Booth@usdoj.gov

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 10422 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in Calisto MT 14-point font in text and in footnotes.

DATED: November 20, 2023.

/s/ Thomas E. Booth
THOMAS E. BOOTH
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Room 1511
Washington, DC 20530
(202) 514-5201
Thomas.Booth@usdoj.gov

40